UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.   : | CASE NO. 21-CR-003 (RCL) |
| : | |
| JACOB ANTHONY CHANSLEY, : | |
| Defendant. : | |

OPPOSITION TO DEFENDANT'S EMERGENCY
MOTION FOR PRE-TRIAL RELEASE

On January 6, 2021, the defendant, Jacob Chansley, was one of the most visible and disruptive rioters who stormed the U.S. Capitol building. Adorned in the now-famous horns, coyote furs, and face paint, and carrying a six foot spear, defendant defied the orders of Capitol police officers, stormed on to the Senate chamber floor, and left a note for the Vice President of the United States that stated "It's Only A Matter of Time. Justice Is Coming." His obstruction of the Congressional proceeding that day, certifying the 2020 Presidential election results, was nothing short of an attempt to undermine the regular functioning of our Democracy. The government's motion for pre-trial detention was granted by the Magistrate Judge in the District of Arizona, and that decision is fully supported by the facts in this case.

For the reasons fully discussed below, the government respectfully opposes the defendant's motion for pre-trial release. The government takes no position on the defendant's motion for sustenance, as the government believes the defendant's care at the D.C. Jail is solely the purview of the Bureau of Prisons. In support thereof, the government states the following:

## I. **BACKGROUND**

### A. **Statement of Facts**

The United States Capitol, located at First Street, SE, in Washington, D.C., is secured 24 hours-a-day by the U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by the Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public and a joint session of the United States Congress convened inside. During the joint session, elected members of the U.S. House of Representatives and the U.S. Senate were meeting in separate Chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m.  Vice President Mike Pence was present and presiding in the Senate Chamber.

With the joint session underway, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the building and the proceedings underway inside.

Between 1:00 p.m. and 2:00 p.m., individuals in the crowd forced their way through, up, and over the barricades and officers of the U.S. Capitol Police, and advanced to the exterior façade of the building. They did so while the joint session was still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the U.S. Capitol.  However, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows.

Shortly thereafter, members of the United States House of Representatives and United

States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the Chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

Chansley was one of the rioters who entered the Capitol building. News and social media coverage of these events confirmed his presence by approximately 2:30 p.m. Chansley wore horns, a furry coyote tail headdress, red, white and blue face paint, and tan pants. He was shirtless and carried a bullhorn and a six-foot-long spear with an American flag tied just below the blade. A social media post (credited as Getty images) demonstrates Chansley's conspicuous appearance outside of the Senate Chambers:



U.S. Capitol Police Officer Keith Robishaw is shown on the left in this image. Officer Robishaw was attempting to quell the crowd and move them out of the area. Chansley approached Officer Robishaw and screamed, among other things, that this was their house, and that they were there to take the Capitol, and to get Congressional leaders.

While Officer Robishaw was attempting to quell the crowd, Chansley was using his

bullhorn to incite it. Because the Capitol building is cavernous, the sound of Chansley's voice over the bullhorn carried to different areas of the building. Officer Robishaw could hear reactions from a different group of protestors in a different hallway—being kept back by other officers—when Chansley would yell into the bullhorn. The photograph below depicts their interaction.



Robishaw and other officers calmed the protestors somewhat and directed them to leave the area from the same way they had entered. Most protestors complied, but Chansley disobeyed the order and instead began heading up a different stairwell towards the Senate floor. Officer Robishaw, alone with many rioters in the Senate Chamber, attempted to engage with Chansley and asked for his assistance to use the bullhorn to get the protestors out of the Chamber. Instead of doing so, Chansley ran up on the dais where Vice President Pence had been presiding just minutes before, and begin posing on the dais for other rioters to document and photograph, and wrote a note to Vice President Pence saying, "It's Only A Matter Of Time. Justice Is Coming." U.S. Capitol Police has retained the note, shown below, as evidence.





On January 7, 2021, Chansley called the Washington Field Office of the FBI and requested to speak with law enforcement. Chansley confessed that he was the man photographed at Vice President Pence's chair on the Senate dais, face painted, carrying the spear and wearing a horned

helmet. He said that he was able to get into the United States Senate in D.C. "by the grace of God." Chansley said that he was glad he sat in the Vice President's chair because Vice President Pence is a child-trafficking traitor. However, Chansley said he did not mean his note to Vice President Pence—"it's only a matter of time, justice is coming"—as a threat. Chansley also expressed his interest in returning to Washington D.C. for the inauguration, later telling the FBI: "I'll still go, you better believe it. For sure I'd want to be there, as a protestor, as a protestor, fuckin' a."

In an interview with NBC News before his arrest, Chansley boasted about his involvement in the mob that infiltrated the Capitol, driving Congress people and staffers to flee in fear of their lives. "The fact that we had a bunch of our traitors in office hunker down, put on their gas masks and retreat into their underground bunker, I consider that a win," Chansley said.[1] Chansley stated that he drove to Washington, D.C. as a part of a group effort, with other "patriots" from Arizona, at the request of the President that all "patriots" come to D.C. on January 6, 2021.

On January 9, 2021, Chansley drove to the Phoenix FBI field office to continue his interview. Chansley was then unaware of the complaint and arrest warrant, as both were sealed until after his arrest that morning. Twice, Chansley told the FBI that he had plans after the January 9 FBI interview to drive to the Arizona State Capitol. Corroborating his statement, Chansley had his horns, furry coyote tail headdress, face paint, tan pants, six-foot-long spear, and his bullhorn inside the 2003 Hyundai that he parked at the FBI. Also inside was a rubber hammer-shaped mallet. Chansley was subsequently arrested pursuant to the arrest warrant when he came to the Phoenix FBI field office.

### B. Procedural Posture

A federal grand jury indicted the defendant on January 11, 2021. The indictment charges two felonies and four misdemeanors arising from Chansley's actions in the Capitol on January 6.

---

[1] "Capitol Rioter in Horned Hat Gloats as Feds Work to Identify Suspects," *available at* https://www.nbcnews.com/news/us-news/capitol-rioter-horned-hat-gloats-feds-work-identify-suspects-n1253392 (last visited January 13, 2021).

Count One, a felony in violation of 18 U.S.C. § 231(a)(3), alleges that Chansley "committed and attempted to commit an act to obstruct, impede, and interfere with a law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder, and the civil disorder obstructed, delayed, or adversely affected the conduct and performance of a federally protected function." Count Two, also a felony, alleges that Chansley "attempted to, and did corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, by committing an act of civil disorder, and threatening Congressional officials, and unlawfully remaining in a restricted building without lawful authority, and engaging in disorderly and disruptive conduct," in violation of 18 U.S.C. § 1512(c)(2).

On January 15, 2021, the government argued for the defendant's detention at a motions hearing before the Magistrate Judge in the District of Arizona. The government argued that authorized in this case because, as explained below, Chansley has committed a felony that involves the use of a dangerous weapon (a spear), and there are serious risks that he will flee and obstruct or attempt to obstruct justice. Furthermore, he poses an ongoing danger to the community that no conditions of pretrial release can mitigate. See 18 U.S.C. § 1342(f)(E), (f)(2)(A), (f)(2)(B), (g)(4). The Magistrate Judge agreed that the defendant's actions were "contrary to the rule of law and were intentionally so." See Attach. 1, Order of Detention, at 3. The Magistrate continued that "the Court has no confidence that the Defendant will follow any release conditions set by the Court, particularly when Mr. Chansley disagrees with the condition." *Id.* Finally, the Court noted that the costume which he donned at the Capitol made him notorious, but without this costume "Mr. Chansley has the benefit of anonymity, which would help him try to flee from prosecution." *Id.*

## II. ARGUMENT

### A. Basis for Review and Legal Standard

The Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community? As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . .

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3195-3196.[2]

Defendant is subject to detention pursuant to 18 U.S.C. § 3142(f)(1)(E) because he possessed a dangerous weapon when he committed his crimes at the Capitol on January 6, 2021. Additionally, the defendant is subject to detention pursuant to 18 U.S.C. § 3142(f)(2)(A) and (B), since he poses a

---

[2] To that end, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . *This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.*

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3486-3487. (Emphasis added.)

serious risk of flight and a serious risk that he will obstruct justice, due to his indictment on an Obstruction count in violation 18 U.S.C. § 1512(c).

In determining whether the defendant should be detained, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g). In this case, there are no condition or combination of conditions that will reasonably assure the safety of the community if the defendant is released, and the government argues he must be held pending disposition in this matter.

### B. The Bail Reform Act factors Strongly Support Incarceration

As the Government argued at the detention hearing, and the Magistrate Judge held, there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community should the defendant be released, nor any assurance that the defendant will not flee from prosecution or obstruct judicial proceedings if released. An analysis of the § 3142(g) factors supports that argument.

#### 1. The Nature and Circumstances of the Offense Charged

A key factor to be considered when assessing the adequacy of release conditions is "the nature and circumstances of the crime charged."  Here, this factor is significant.  The crimes charged in the indictment involve active participation in an insurrection attempting to stop the regular functioning of the United States Government.  The defendant defied law enforcement officers, incited the crowd of fellow rioters, stormed on to the Senate chamber floor, and left a threatening note for the Vice President of the United States. This factor strongly favors his detention.

2. **The Weight of the Evidence Against the Defendant**

The evidence against the defendant is overwhelming, including not only photographs and videos of his participating in the offenses alleged, but his own words to the media and to the FBI confirming his illegal activities on the Capitol grounds that day. He is a highly visible figure in the insurrection that occurred, and therefore, this factor weighs in favor of detention.

3. **The History and Characteristics of the Defendant**

The offenses committed by the defendant illuminate characteristics inconsistent with a person who could follow orders given by this Court, or indeed, any branch of the federal government. The defendant has espoused disbelief in the outcome of the 2020 Presidential election, and violently acted on that world view. The defendant clearly defied the orders of law enforcement officers who were trying to restore order at the Capitol, and indeed escalated the chaos and danger those members of law enforcement. When faced with the decision whether or not to obey law enforcement, the defendant chose to defy them, and cannot be trusted to follow orders of this Court as a result.

Additionally, the defendant has a strong social media presence, and where he has espoused his fringe, extremist, anti-government views. The defendant cannot be trusted to keep from inciting, contacting or coordinating with other radical extremists, intent on continuing to obstruct the normal functioning of our democracy. Given his participation in the obstruction of the normal functioning of the government, and his disbelief in the legitimacy of the current United States government, it is unlikely that the defendant will obey any pretrial release conditions.

Particularly worth noting, as the Magistrate Judge did in her decision to hold the defendant, Mr. Chansley is almost unrecognizable as the face of the riot at the Capitol on January 6th when

not in his costume and makeup from that day. This grants him anonymity and eases his ability to flee from prosecution should he be released.

Finally, the crimes charged in the indictment involve active participation in an insurrection attempting to stop the regular functioning of the United States Government. By Chansley's own admissions to the FBI and news media, the insurrection is still in progress and he intends to continue participating. His past activities indicate that, should he be released, he would continue in this endeavor. This factor strongly favors detention.

### 4. The Nature and Seriousness of the Danger to Any Person or the Community

Finally, the fourth factor, the nature and seriousness of any danger to the community, strongly favors detention. It bears repeating that the defendant was an active participant in the most violent insurrection to occur at the U.S. Capitol in over 200 years. Specifically, this defendant was part of a group of highly visible rioters who argued with police officer attempting to protect the seat of the federal government. The defendant made himself the symbol of a radicalized insurrection movement, and has professed his intent to act in the future as he did at the Capitol on January 6. Employment conditions, travel restrictions, and a reporting requirement will not mitigate the danger that he will do so. He is a danger to the continued operation of the federal government, the law enforcement officers dedicated to protecting that government, and to the community at large.

An analysis of the factors under 18 U.S.C. § 3142(g) demonstrates that the Defendant should remain detained pending trial. As a result, the government respectfully opposes the defendant's emergency motion for pre-trial release. The government takes no position as to the dietary conditions imposed upon the defendant while in custody at the D.C. Jail.

        Respectfully submitted,

        MICHAEL SHERWIN
        UNITED STATES ATTORNEY


        /s/
        KIMBERLY L. PASCHALL
        Assistant United States Attorney
        D.C. Bar 1015665
        U.S. Attorney's Office
        555 4th Street, N.W., Room 4116
        Washington, D.C. 20530
        202-252-2650
        Kimberly.Paschall@usdoj.gov

## **CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing opposition to the motion for release has been served upon defense counsel, Al Watkins, by email and ECF/PACER notification, on this day, February 3, 2021.


        /s/
        KIMBERLY L. PASCHALL
        Assistant United States Attorney