# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **CASE NO. 21-CR-003 (RCL)** |
| | : | |
| **JACOB ANTHONY CHANSLEY,** | : | |
| Defendant. | : | |

## OPPOSITION TO DEFENDANT'S EMERGENCY
## MOTION FOR PRE-TRIAL RELEASE

"The fact that we had a bunch of our traitors in office hunker down, put on their gas masks and retreat into their underground bunker, I consider that a win."

Twenty-four hours after leading the charge into the United States Capitol on January 6, 2021, defendant Jacob Chansley spoke those words in an interview with NBC News.[1] The Court need look no further than the defendant's own words during and after the riot to determine that he is a danger to the community. Statements of guilt and remorse after the defendant's subsequent incarceration are no match for the evidence the government has proffered about the defendant's actions on January 6, 2021, many of which were caught on national media for the world to see.

For the reasons fully discussed below, the government opposes the defendant's motion for pre-trial release. The government will not restate the arguments made in its Memorandum in Opposition to Defendant's Emergency Motion for Pre-trial Release, ECF No. 7, but asks that those arguments be incorporated herein. There is a basis to hold the defendant under 18 U.S.C.

---

[1] "Capitol rioter in horned hat gloats as feds work to identify suspects," NBC News, January 7, 2021, https://www.nbcnews.com/news/us-news/capitol-rioter-horned-hat-gloats-feds-work-identify-suspects-n1253392 (last accessed March 1, 2021).

1

3142(f)(1)(E), (f)(2)(A), and (f)(2)(B), and that the factors in 18 U.S.C. 3142(g) favor detention.[2] In support thereof its continued opposition, the government responds to the defendant's arguments as follows.

**I.  The Defendant Was Carrying a Dangerous Weapon When Confronting Capitol Police Officers And Gallivanting on the Floor of the Senate.**

Despite defense's argument to the contrary, ECF No. 12, at 13-14, the defendant was carrying a dangerous weapon when he stormed the U.S. Capitol and confronted Capitol Police officers. The bail reform statute's basis for hold in a felony that involves a "dangerous weapon" under 18 U.S.C. § 3142(f)(1)(E) does not restrict that term to a firearm or destructive device. Indeed, several other defendants in cases involving the Capitol riot have been detained for possessing non-traditional weapons like an axe handle[3] and a flag pole.[4] As Chief Judge Howell noted in the Memorandum Opinion on the detention appeal in *United States v. William Chrestman,* 21-mj-218 (ZMF), ECF No. 23, at 15, "a defendant's carrying or use during the riot of a dangerous weapon, whether a firearm, a large pipe, a wooden club, an axe handle, or other offensive-use implement, indicates at least some degree of preparation for the attack and an expectation that the need to engage in violence against law enforcement or, indeed, the Legislative branch, might arise." Here, the defendant confronted members of Capitol Police with a blade several inches in length atop a pole which matched the defendant in height. See below at Figure 1.

---

[2] The defense argues that the government is trying to argue that the defendant has committed a crime of violence and this is an inappropriate basis for a hold. ECF No. 12, at 17. The government has not alleged that 18 U.S.C. 3142(f)(1)(A) is an appropriate basis for a hold in this case, as the defendant has not been indicted on a crime of violence at this time.
[3] *United States v. William Chrestman,* 21-mj-218 (ZMF).
[4] *United States v. Peter Stager,* 21-cr-35 (EGS).



*Figure 1*

The defendant subsequently took that weapon in to the gallery the United States Senate chamber, driving it into the ground while screaming obscenities at the top of his lungs.[5] Not only were his actions terrifying, they were obstructing the normal functioning of the Government, as clearly no business could be conducted when a man with a spear shouting obscenities was in the Chamber. The argument that such a weapon is actually an honorific to his Shaman faith and to the United States flag, which was crudely zip-tied to the weapon, is a difficult pill to swallow, particularly when the defendant is dishonoring everything that flag represents by attempting to stop the peaceful transfer of power on which our Democracy is built.

---

[5] See "A Reporter's Video from Inside the Capitol Siege," by Luke Mogelson, The New Yorker, from 00:33 to 00:50, https://www.newyorker.com/news/video-dept/a-reporters-footage-from-inside-the-capitol-siege (last accessed March 1, 2021.)

**II. The Intent of the Threatening Note to the former Vice President is Made Plain by Other Contemporaneous Statements, And Speaks to His Dangerousness.**

The defense argues that a note written by the defendant left on the Senate dais for Vice President Pence stating "It's Only A Matter of Time Justice is Coming" was not a threat. ECF No. 12, at 16. While the plain language of the note itself should be sufficient to overcome this argument, the defendant's actions surrounding the creation of the note, and his statements to the press and FBI afterwards, prove that it was such. While a lone Capitol Police officer was trying to clear the Senate Chamber of rioters, the defendant marched straight up to the Senate dais, took a seat where then-Vice President Pence had been presiding a short while before, and told the officer he would not be leaving the chair, because "Mike Pence is a f--king traitor."[6]



---

[6] *Id.,* from 06:50 to 06:55, https://www.newyorker.com/news/video-dept/a-reporters-footage-from-inside-the-capitol-siege (last accessed March 1, 2021.)

After asking a fellow rioter to take a photograph of him on the dais, the defendant ignored the officer's request to "walk out of the room," and scrawled the now-famous note. The defendant then turned the note for the reporter to see it, and repeated the message to the camera: "It's only a matter of time. Justice is coming!"[7]



More rioters streamed into the Chamber, and the defendant then lead the crowd in an invocation over his bullhorn, which included giving thanks for the opportunity "to allow us to send a message to all the tyrants, the communists, and the globalists, that this is our nation, not theirs, that we will not allow America, the American way of the United States of America to go down." He goes on to say "[t]hank you for allowing the United States of America to be reborn. ***Thank you for allowing us to get rid of the communists, the globalists, and the traitors within our government.***"[8] There can be no

---

[7] *Id.,* from 07:35 to 07:50, https://www.newyorker.com/news/video-dept/a-reporters-footage-from-inside-the-capitol-siege (last accessed March 1, 2021.)
[8] *Id.*, from 08:15 to 09:20, https://www.newyorker.com/news/video-dept/a-reporters-footage-from-inside-the-capitol-siege (last accessed March 1, 2021.)

doubt of the defendant's intentions—to rid our government of people he believes to be traitors, including then-Vice President Mike Pence.

Subsequent discussion with news outlets, like the quote to NBC News mentioned above, and statements to the FBI in the days further corroborate the meaning of these threats. He explained again that he believed then-Vice President Mike Pence to be a traitor, and that many current and past political leaders were infiltrators.[9]

As Chief Judge Howell has noted, "Grave concerns are implicated if a defendant actively threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification of the electoral vote count during the riot, thereby encouraging others to engage in such conduct. These factors measure the extent of a defendant's disregard for the institutions of government and the rule of law, qualities that bear on both the seriousness of the offense conduct and the ultimate inquiry of whether a defendant will comply with conditions of release meant to ensure the safety of the community." *Chrestman,* 21-mj-218 (ZMF), ECF No. 23, at 16.

Undeterred by the threat of potential prosecution, the defendant continued to push his dangerous rhetoric about the leaders of our nation. Indeed, during his custodial interview, the defendant stated he hoped to return to Washington, D.C. for the inauguration, indicating willingness to continue his dangerous activities. He cannot be trusted now to suddenly change course.

### III. The Defendant Cannot Hide Behind the Former President to Immunize His Criminal Acts

The defense argues that the defendant has an "estoppel by entrapment" defense available to him, based upon the statements made by the former President in advance of the riot on January 6th.

---

[9] The defendant did tell the FBI-Phoenix agents who interviewed him that he did not believe this was a threat.

This argument is presented solely to counterbalance the overwhelming evidence against the defendant, and Chief Judge Howell has already addressed the providence of such a defense, noting that it is a narrowly tailored defense, available in very limited circumstances, and was not a defense which excused the conduct of a similarly-situated Capitol riot defendant. *Chrestman,* 21-mj-218 (ZMF), ECF No. 23, at 21. "The Court need not dally over the particulars of the defense to observe that, as applied generally to charged offenses arising out of the January 6, 2021 assault on the Capitol, an entrapment by estoppel defense is likely to fail. Central to *Raley, Cox, and PICCO* is the fact that the government actors in question provided relatively narrow misstatements of the law that bore directly on a defendant's specific conduct." *Id.,* at 24 (citing *Raley v. Ohio,* 360 U.S. 423 (1959), *Cox v. Louisiana,* 379 U.S. 559 (1965), and *United States v. Pennsylvania Industrial Chemical Corp.* ("*PICCO*"), 411 U.S. 655 (1973).

The January 6th defendants, in contrast "could not argue that they were at all uncertain as to whether their conduct ran afoul of the criminal law, given the obvious police barricades, police lines, and police orders restricting entry at the Capitol." *Id.*, at 25. Rather, the defense follows that because the defendant acted under the belief that the former President had made this conduct of the mob legal. The cases delineating this defense are clear: there is no availability of the defense where a government actor's statements constitute a "waiver of law" beyond his or her lawful authority. *Cox v. Louisiana,* 379 U.S. 559, 569 (1965). As Chief Judge Howell has noted, "No American President holds the power to sanction unlawful actions because this would make a farce of the rule of law." *Chrestman,* ECF No. 23, at 25. The limitations on this defense make it highly unlikely that the defendant will prevail, and should do little to outweigh the evidence currently proffered against him.

Moreover, rather than supply a reason for leniency, this argument that the defendant followed the orders of the former President bolsters the government's argument that the defendant would not

obey the rule of law if released. The defendant has said multiple times that he came to Washington, D.C. on January 6th to "stand up to it all" and that he believed the former President asked the defendant go to prevent a fraudulent election. The defendant's actions in response to such a misplaced belief cannot be laid at the feet of anyone other than the defendant himself. The fact that the defendant was willing to participate in the actions of a mob which sought to subvert the will of the people in a free and fair election is proof that he cannot be trusted to refrain from violently promoting his political ends in the future. And his willingness now to pass the buck to others when the evidence of his wrongdoing is so strong, evinces with certainty the fact that he cannot be trusted to remain in the community. He is a danger and must remain detained.

An analysis of the factors under 18 U.S.C. § 3142(g) demonstrates that the Defendant should remain detained pending trial. As a result, the government respectfully opposes the defendant's motion for pre-trial release.

Respectfully submitted,

MICHAEL SHERWIN
UNITED STATES ATTORNEY


 /s/
KIMBERLY L. PASCHALL
Assistant United States Attorney
D.C. Bar 1015665
U.S. Attorney's Office
555 4th Street, N.W., Room 4116
Washington, D.C. 20530
202-252-2650
Kimberly.Paschall@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing opposition to the motion for release has been served upon defense counsel, Al Watkins, by email and ECF/PACER notification, on this day, March 1, 2021.

/s/
KIMBERLY L. PASCHALL
Assistant United States Attorney