UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CASE NO. 21-CR-003 (RCL) |
| : | |
| JACOB ANTHONY CHANSLEY, : | |
| Defendant. : | |

**OPPOSITION TO DEFENDANT'S MOTION TO REOPEN
DETENTION HEARING AND FOR PRE-TRIAL RELEASE**

The defense has provided this Court with dozens of video exhibits to support its prayer for release in this case. None of those videos are "new and material" information, relevant to reopening the detention hearing.

With its opposition motion, the government submits to this Court just three exhibits, which demonstrate, along with all the prior evidence proffered by the government, that defendant Jacob Chansley was not welcomed into the U.S. Capitol by police officers, nor a mere follower among the riotous crowd, nor a peaceful protester at the United States Capitol on January 6, 2021.

The defendant is depicted in Exhibit 1 on U.S. Capitol CCTV video storming up the stairs to the Upper West Terrace of the Capitol in the mob that overran officers holding a police line at the top of the scaffolding leading to the first story of the U.S. Capitol building at approximately 2:10 p.m. The defendant is depicted in Exhibit 2 on U.S. Capitol CCTV video entering the building—in what has been confirmed by U.S. Capitol Police as the first breach of the building on January 6th—on the first floor of the Senate wing at approximately 2:13 p.m. Finally, the defendant is depicted in Exhibit 3 on U.S. Capitol CCTV video entering the Senate Gallery, alone and unescorted, at approximately 2:52 p.m., long after his now-famous interaction with Officer

1

Robishaw, when he and other rioters were asked to leave the building, but before his appearance on the Senate Floor. The Court's initial assessment remains correct: the defendant was not in the "third wave" of the breach of the U.S. Capitol; he "quite literally spearheaded it." ECF No. 25, at 23.



*Exhibit 1- Capitol CCTV Camera Upper West Terrace, appx 14:10 hours*



*Exhibit 2- Capitol CCTV Camera Senate Wing, appx 14:13 hours*



*Exhibit 3- Capitol CCTV Camera Outside Senate Gallery, appx 14:52 hours*

For the reasons fully discussed below, the government opposes the defendant's motion to reopen the detention hearing and the motion for pre-trial release. The government will not restate the arguments made in its Memorandum in Opposition to Defendant's Emergency Motion for Pre-Trial Release, ECF No. 7, Memorandum in Opposition to Defendant's Emergency Motion for Pre-Trial Release, ECF No. 17, and Surreply to Defendant's Emergency Motion for Pre-Trial Release, ECF No. 23, but respectfully asks that those arguments be incorporated herein. There remains a basis to hold the defendant under 18 U.S.C. 3142(f)(1)(E), (f)(2)(A), and (f)(2)(B), and that the factors in 18 U.S.C. 3142(g) continue to strongly favor detention. In support of its continued opposition, the government responds to the defendant's arguments as follows:

**I.     The Defendant Has Not Met the Standard to Reopen the Detention Hearing.**

The determination that a criminal defendant must be detained pursuant to section 3142(g) "may be reopened" at any time prior to trial if new information surfaces that has a "material bearing on the issue [of] whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." *United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020) (citing 18 U.S.C. § 3142(f)). "New and material information ... consists of something other than a defendant's own evaluation of his character or the strength of the case against him"; instead, it must consist of "truly changed circumstances, something unexpected, or a significant event." *Id.*, (citing *United States v. Esposito*, 354 F. Supp. 3d 354, 359 (S.D.N.Y. 2019)). Moreover, and significantly for present purposes, "previously unavailable information has *no* material bearing on the factors that must be considered to establish the propriety of pretrial detention *unless* that new information casts different light on any of those factors." *Lee*, at 5 (emphasis in original).

**A. Videos Provided By the Defense Are Not "New and Material" Information.**

The defense has proffered allegedly new information, intended to corroborate its position that the defendant was acting peacefully on January 6, and not in contravention of police orders. However, much of this argument is neither new nor novel, and merely rehashes arguments made by counsel at the prior detention hearing. ECF No. 12, at 20 ("The proof in the record is that Defendant, unlike others involved in acts of violence and assault in the U.S. Capitol Building on January 6, 2021, the Defendant herein did not have any specific plan to travel to or enter into the Capitol, much less commit violence, possess a weapon, vandalize, thieve, commit any acts of violence or assault, enter private offices, view secretive or classified materials, or take any action other than that which is reflected in virtually limitless video footage of the Defendant while in the U.S. Capitol Building.")

The defendant's 'newly' discovered evidence mostly consists of videos on YouTube. *See* ECF No. 40, at 10-23. None of these videos provide any new or material evidence on the limited question of detention. Several of the videos do not even depict the defendant. *See* ECF No. 40, at 10, Para. 30; at 19, Para 43; at 19, Para 44. Others have no bearing on the § 3142(g) factors. *See* ECF No. 40, at 9, Para. 27 (the defendant allegedly stops a muffin theft); at 9-10, Para. 28 (the defendant's childhood essay from 2005). Others still show even more illegal conduct committed by the defendant on January 6th. *See* ECF No. 40, at 10, Para 29 (the defendant inciting a crowd illegally present on the U.S. Capitol Grounds by shouting on his bullhorn that America is being restored); at 15, Para 37 (same video as above); at 16, Para 40 (videos of Chansley on Capitol Grounds, climbing the scaffolding directly in front of the police line, inciting the crowd with chanting on his bullhorn); at 20, Para 46 (another rioter speaking on the defendant's bullhorn, and Officer Robishaw begs the mob not to attack or assault anyone). And, most tellingly, some videos

*bolster* the government's argument that the defendant had long aimed to stop the normal functioning of the government by ridding it of its "traitors." See ECF No. 40, at 15, para 40 (the defendant being interviewed in November 2020, describing Arizona as "a swamp and a cesspool" after the election results); at 15, Para 40 (the defendant screaming at a crowd about psychological warfare and fighting for America in November 2020, stating that "now we know who the traitors are…now we know who the infiltrators are, we have to go through the work of getting rid of 'em.").

The defense also references the video from *The New Yorker* piece "A Reporter's Video from Inside the Capitol Siege," and suggests that it was heavily edited and not presented in temporally chronological order. ECF No. 40, at 12. The government never proffered that the video was unedited, nor did the Court rely on such an assertion in its prior rulings. ECF No. 25, at 24, n. 7. Instead, the video shows what the government has been arguing from the beginning—that the defendant was screaming obscenities and carrying a spear inside the Senate gallery when a vital Congressional proceeding should have been taking place; that the defendant ignored the repeated requests of Officer Robishaw to vacate the Senate dais; that the defendant called the Vice President of the United States a "fucking traitor;" and leading other rioters in an incantation on his bullhorn. This is not new. It is material, and the Court has already reviewed it. The Court's ruling correctly recognized a dangerous man obstructing the normal functioning of the United States government. ECF No. 25, at 27. That threat has not abated, and nothing in the defense's proffered evidence shows otherwise.

### B. The Defense Proffer As to The Defendant's Condition and the COVID-19 Protocols Was Raised at the Prior Hearing and Is Not Material.

The defense argues that the protocols in place within the federal Bureau of Prisons to combat the spread of COVID-19 is cumbersome to the defendant's ability to meet with his attorney and is detrimental to his mental well-being. ECF No. 40, at 34-35. This, also, is not new information and was previously argued by counsel in prior pleadings. ECF No. 12, at 8.

In addition, other judges in this Court have addressed whether the global pandemic is material to the impact of the 18 U.S.C. § 3142(g) factors, warranting the reopening of a detention hearing. *See, e.g.*, *United States v. Lee*, 451 F. Supp. 3d 1, 7 (D.D.C. 2020) ("this Court doubts that the COVID-19 pandemic has any material impact on the section 3142(g) factors that led [the Magistrate] to determine that pretrial detention was warranted."). Simply put, the global pandemic and protocols in place to prevent its spread cannot alter the nature and circumstances of a charged offense, nor does it impact the weight of the evidence. *Id.* While the defense argues that the protocols have put a strain on the defendant's mental health, the defense makes no credible argument as to why the defendant's personal circumstances are not like those of other defendants for whom detention is difficult. Nor has the defense proffered a specific health condition that would make the COVID-19 pandemic have a readily material bearing—like those with underlying medical conditions that make them susceptible to the virus. *Id.* Finally, and perhaps most importantly, the COVID-19 protocols and their effect on the defendant have no bearing on the dangers posed by the defendant if he were released into the community. As the government has repeatedly argued, and argues again below, that danger is high and should be heeded by the Court.

## II.     If the Court Does Reopen the Detention Hearing, The Defendant Has Not Proven That He Would Not be A Danger If Released Into the Community.

The government has not previously argued, nor does it now argue, that the defendant stands accused of committing a definitional crime of violence at the Capitol on January 6th. We have,

on the other hand, showed, that the defendant was among the first to enter the Capitol building, that his actions inside the Senate Chambers further incited rioters, that he contradicted the requests of law enforcement, and that he obstructed the normal function of our Democracy. The defendant continues to be a danger to the community and should not be released.

### A. The Defendant Was A Part of the First Breach of the U.S. Capitol Building.

Despite defense's argument to the contrary, ECF No. 40, at 13-14, the defendant was among the very first rioters to breach the U.S. Capitol Building on January 6, 2021. The U.S. Capitol Police videos submitted with this opposition as Exhibits 1 and 2 show the defendant running up the stairs to the Upper West Terrace once a line of police officers was forced to retreat, and then entering the building at approximately 2:13 p.m. when other rioters broke the windows to the Senate wing and made the first breach of the building.

### B. Vice President Mike Pence Remained in the U.S. Capitol Building and Grounds Throughout the Entire Riot.

Defense proffers a video showing dark cars driving near the Capitol as proof that then-Vice President Pence left the Capitol at 1:59 p.m., and casting doubt on the viability of the charges against the defendant, specifically the violations of 18 U.S.C. § 1752(a). ECF No. 40, at 18. This assertion is false. As confirmed by the U.S. Secret Service, then-Vice President Mike Pence remained in the U.S. Capitol Building and Grounds throughout the entire riot on January 6, 2021. It is truly incredible that the defense can believably contend that a man carrying a spear, repeatedly contradicting the directions of law enforcement, shouting that Mike Pence is "a fucking traitor," and penning a note for Mike Pence stating "It is Only A Matter of Time. Justice Is Coming!" was not a danger to the physically-present Vice President of the United States.

**C. The Defendant's Notoriety and Strong Social Media Presence Speaks to His Continuing Dangerousness.**

The defense argues that he would no longer be a danger if released. But as the government continues to investigate this case, we have learned even more information about the defendant's social media behaviors and conduct, previously spreading inflammatory and violent rhetoric which cannot be ignored in the context of his participation in the Capitol riot. Such social media evidence, posted on Facebook, illustrate the defendant's escalation in rhetoric over the course of 2020:

> June 6, 2020: "This brief video explains the many reasons why the US elections have been under attack for many generations & how it is that we as a country are taking our elections back from the globalist NWOCDC-MSM!"

> July 16, 2020: "This video explains how the DC swamp was formed, how it is maintained & who the swamp monsters are in our nation's capital. It details inarguable truths that once understood make the roots of gov. corruption clear & exposes the traitors at every level."

> September 10, 2020: "This video elaborates on the many reasons why everyone in the US, UK & elsewhere must stand up for & exercise their inalienable God-given rights! Tyranny can not win if we unite against the globalist/communists! Division & fear will not win when we unite!"

> October 11, 2020: "This video dives deep into the ways spiritual warfare is being waged all around us all the time in plain sight. It also covers the ways that infiltration into nations is key in order to wage this modern form of ancient spiritual warfare. This is a must-see."

> November 19, 2020: "This video explains how we can all ID the traitors in our government, news networks, entertainment & corporations. It also gives a detailed description of how we can examine these traitor's actions on a grander scale so we may halt their agenda in the USA!"

> December 28, 2020: "This video dives deep into the globalist plot for world domination thru the plandemic & its numerous different agendas. It also explains how the deep state was created, who in our gov. is responsible for is propagation in the US & what we can do to end it."

> December 29, 2020: "This video reveals the 5-D chessboard in a way that should bring everyone comfort, help people trust POTUS & trust the plan. It explains the

way this new type of warfare is being conducted & won in the US. It also details the biblical nature of this time!"

Even the defense's own exhibits prove that he has been obsessing and spewing rhetoric about getting rid of traitors for months before his appearance at the Capitol, ECF No. 40, at 15. If he is released, the evidence suggests that this behavior will undoubtedly continue.

The defendant's motion provides no basis to reopen the detention hearing. In any event, a substantive review of the Bail Reform Act factors continue to militate in favor of detention. As a result, the government respectfully opposes the defendant's motion to reopen the detention hearing and for pre-trial release.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY


\_\_\_/s/_____

KIMBERLY L. PASCHALL
Assistant United States Attorney
D.C. Bar 1015665
U.S. Attorney's Office
555 4th Street, N.W., Room 4116
Washington, D.C. 20530
202-252-2650
Kimberly.Paschall@usdoj.gov