IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:21-cr-00003-RCL |
| ) | |
| JACOB ANTHONY CHANSLEY, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S SUPPLEMENTAL BRIEFING ON ISSUE OF DEFENDANT'S FLIGHT RISK AS PART OF DEFENDANT'S MOTION TO REOPEN DETENTION HEARING BASED ON NEW EVIDENCE AND INFORMAJTION**

Comes now Defendant, Jacob A. Chansley, by and through his undersigned counsel, and for Defendant's Supplemental Briefing on Issue of Defendant's Flight Risk as Part of Defendant's Motion to Reopen Detention Hearing Based on New Evidence and Information, states to the Court as follows:

**PROCEDURAL HISTORY**

1. The Defendant was originally charged under a sealed Complaint filed in this District on January 8, 2021.The Defendant, having heard that federal law enforcement sought to make contact with him, promptly contacted the FBI and self-surrendered without incident on January 9, 2021. Two days later, on January 11, 2021, Defendant was indicted in this District. The Defendant made his initial appearance herein before U.S. Magistrate Deborah Fine in the District of Arizona. A Detention Hearing was conducted before Magistrate Judge Fine on January 15, 2021. Magistrate Judge Fine ordered the Defendant detained pending trial. The Defendant was then transferred to the District of Columbia and was being held in a state facility run by the Commonwealth of Virginia in Alexandria under an agreement with the U.S. Bureau of Prisons and is now understood to be enroute to Englewood, Colorado for a psych exam. The Defendant

1

filed a Motion for Pretrial Release, the hearing for which was conducted and gave rise to an Order dated March 8, 2021. The March 8, 2021 Order was reasoned and supported by a Memorandum filed by this Court concurrently with the Order denying Defendant's Motion for Pretrial Release. On May 21, 2021, this Court granted an oral Motion for a Psych Exam to be conducted on the Defendant. On May 25, 2021 a doctor of psychology assigned to conduct the psych exam on Defendant was disclosed. The Defendant filed his Motion to Reopen Detention Hearing Based on New Evidence and Information on May 26, 2021.  On June 4, 2021 the Government filed its Opposition to Defendant's Motion to Reopen Detention Hearing. On June 11, 2021, Defendant filed his Reply to Government's Opposition to Defendant's Motion to Reopen Detention Hearing Based on New Evidence and Information. Approximately three hours later on June 11, 2021, this Court issued an Order directing the parties to file a supplemental briefing on Defendant's Motion for to Reopen Detention Hearing Based on New Evidence and Information to address the issue of Defendant's risk of flight. The Defendant has been ordered to file the present supplemental brief by June 16, 2021.

## LEGAL DISCUSSION

2. **Factors Judicial Officer Must Take Into Consideration Regarding A Defendant's Eligibility For Release**:  When making a determination regarding the eligibility of a defendant for pretrial release (whether personal recognizance, unsecured appearance bond, or release on conditions), the judicial officer must consider a number of the factors listed in Section 3142(g). For the purposes of the present supplemental brief, the Defendant limits the scope of same to solely address the issue of Defendant's risk of flight.

    A. character – including physical and mental condition), family ties, employment, financial resources, length of time in the community, community ties, conduct history relating to drug or alcohol abuse, criminal history, record of court appearances; and

    B. Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law.

3. The procedures and standards governing pretrial detention in federal court were modified substantially in 1984 with the Bail Reform Act of 1984 (18 U.S.C. § 3142). The modification was made to give courts adequate authority to make pre-trial decisions that consider the dangers of an individual's release in lieu of pretrial detention. The Supreme Court has limited the circumstances in which pre-trial detention can be sought by the government to some of the most serious federal criminal offenses.

4. The Bail Reform Act presumes federal criminal defendants should be released pending trial or sentencing in their case, unless narrowly drawn categories of potential pre-trial detainees. However, the presumption of release pretrial still allows for conditions of pretrial release to ensure the safety of the community and the Defendant's return to court. The language of the act itself gives preference to pretrial release for federal criminal defendants. The Bail Reform Act sets careful boundaries, in which pre-trial detention may be ordered. It is widely accepted that only six circumstances exist that permit a court to even hold a pretrial detention hearing, let alone place a federal criminal defendant into pretrial detention:

    1. Cases with a maximum sentence of life imprisonment or death;
    2. Cases involving federal violent crime;
    3. Cases involving serous drug offenses, i.e., 10 years or more in federal prison;
    4. Defendants considered recidivist offenders, i.e., two or more relevant felony convictions involving violence or drug offenses
    5. Defendant poses a serious risk of flight, not returning to court;
    6. Defendant poses a serious risk of obstructing justice.

5. The government often moves for detention on the ground that the person is an ordinary "risk of flight." This is not a permissible statutory basis for detention. Rather, the statute only authorizes detention if there is a "serious risk that [the defendant] will flee." 13 § 3142(f)(2)(A) (emphasis added).

6. There is some risk of flight in every criminal case; according to a basic canon of statutory interpretation, the term "serious risk" means that the risk must be more significant. See Corley v. United States, 556 U.S. 303, 314 (2009) ("One of the most basic interpretative canons" is "that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.").

7. Moreover, the government rarely, if ever, presents any evidence to support its allegation that the risk that a particular person will flee rises to the level of a "serious risk." Such is the case here. In fact, the Senate's 1983 report makes clear that detention based on serious risk of flight should only occur in extreme and unusual cases. See Bail Reform Act of 1983: Report of the Committee on the Judiciary, 98th Cong. 48 (1983) ("Under subsection f(2), a pretrial Detention Hearing may be held upon motion of the attorney for the government or upon the judicial officer's own motion in three types of cases. . . . [T]hose [types] involving . . . a serious risk that the defendant will flee . . . reflect the scope of current case law that recognizes the appropriateness of denial of release in such cases.") (emphasis added) (citing United States v. Abrahams, 575 F.2d 3, 8 (1st Cir. 1978)—which held that only a "rare case of extreme and unusual circumstances . . . justifies pretrial detention"—as representing the "current case law"). Congress intended judges to make findings on this issue. § 3142(f)(2)(A) only authorizes detention at the Initial Appearance "in a case that involves" a "serious risk" that the person will flee.

8. Yet judges regularly detain people under this provision in non-extreme, ordinary cases without expecting the government to substantiate its request or demonstrate that there is a "serious risk" the person will flee. See, e.g., United States v. Byrd, 969 F.2d 106, 110 (5th Cir. 1992) ("[W]e find ourselves in agreement with the First and Third Circuits: a defendant's threat to the safety of other persons or to the community, standing alone, will not justify pre-trial detention."). See Bail Reform Act of 1983: Report of the Committee on the Judiciary, 98th Cong. 48 (1983) ("Under subsection f(2), a pretrial Detention Hearing may be held upon motion of the attorney for the government or upon the judicial officer's own motion in three types of cases. . . . [T]hose [types] involving . . . a serious risk that the defendant will flee . . . reflect the scope of current case law that recognizes the appropriateness of denial of release in such cases.") (emphasis added) (citing United States v. Abrahams, 575 F.2d 3, 8 (1st Cir. 1978)—which held that only a "rare case of extreme and unusual circumstances . . . justifies pretrial detention"—as representing the "current case law"). For example, a federal magistrate judge in the District of Puerto Rico detained a defendant based on ordinary "risk of flight," even though no § 3142(f)(1) factor was met and there was no determination that the defendant posed a "serious risk of flight" as required by the statute, and despite clear First Circuit authority to the contrary. United States v. Martinez-Machuca, 18-cr-568 (D.P.R. April 30, 2019) at 5–6 (acknowledging § 3142(f) conditions for holding a detention hearing exists") (citing United States v. Ploof, 851 F.2d 7, 11 (1st Cir. 1988)).

**JACOB A. CHANSLEY, CRIMINAL HISTORY AND FAMILIAL TIES TO PHOENIX**

9. Defendant, Jacob A. Chansley is a 33-year-old man who has lived in Phoenix, Arizona all of his life with the exception of an approximately two (2) year stint in the U.S. Armed Forces serving as a member of U.S. Navy on board the U.S.S. Kitty Hawk.

5

10. Mr. Chansley has no criminal history.

11. Mr. Chansley was punctilious in his handling of a speeding summons he received in Oklahoma while returning from Washington, D.C. shortly after attending the events of

12. January 6, 2021 at the U.S. Capitol.

13. Also, while en route from Washington, D.C. to return home to Phoenix, Mr. Chansley learned that the FBI desired to speak with him about the events of January 6, 2021. While traveling, Mr. Chansley immediately reached out to the FBI, confirmed where he was, what he was doing, the timeline therefore, and responded candidly and transparently to inquiries propounded by the FBI. During that conversation, Mr. Chansley also confirmed the anticipated timeline corresponding to his return to Phoenix and, further, committed to meeting with the FBI upon his return to Phoenix, Arizona.

14. True to his word, upon his return to Phoenix, Arizona, Defendant drove to the FBI offices and met with the FBI, answered their inquiries peacefully and candidly and truthfully. Mr. Chansley also voluntarily permitted the FBI access to his car and the contents thereof, including the flagpole, finial, flag, horns, and fur donned by the Defendant on January 6, 2021. The Government seized these items and has been in possession of same since.

15. Also, during his meeting with the FBI in Phoenix, the Defendant provided the FBI with his cell phone and the necessary information to access data therein. Mr. Chansley was peaceful. His self-surrender did not require exploitation of federal resources to track him down. Mr. Chansley has been detained since.

16. The Court is aware of Mr. Chansley's long standing practice of and belief in Shamanism; his commitment to Ahimsa (the discipline of peacefulness to all living things, large and small). Mr. Chansley has shared his longstanding idolization of men of peace, Jesus Christ, Mhatma

6

Ghandi, and Martin Luther King. Anecdotally, the Court has been made aware of the Defendant's reputation for "capturing and releasing" flies rather than swatting them.

17. Mr. Chansley has resided with his mother for virtually all of his life (other than during his stint in the military). Mr. Chansley's mother is 56 years of age. She has resided at the same Phoenix, Arizona address for thirty (30) years, virtually the entire life of Jacob Chansley.

18. Since the age of five, Mr. Chansley's mother was raised and grew up in a home approximately two miles from her current residence. She is a full-time esthetician at a respected Phoenix based "institute" addressing skin care and beautification. Mr. Chansley's mother has one brush with the law during her life, being a DUI in 2008. Mr. Chansley's mother now does not consume any alcohol and hasn't for years.

19. If released pending trial, Mr. Chansley's mother has committed to allowing and encourages Mr. Chansley to re-commence residing at her home.

20. Jake is one of three siblings, all boys. One of his two brothers also resides and works in Phoenix, Arizona.

21. Mr. Chansley's maternal grandfather (the primary male-role model for Defendant during his formative years) resides with his wife (Defendant's step-grandmother) approximately five minutes away from Mr. Chansley's mother's residence, being the residence of Mr. Chansley's mother.

22. Mr. Chansley's maternal uncle resides with Mr. Chansley's maternal grandfather and step-grandmother.

23. Mr. Chansley's maternal step-grandmother's grandson and granddaughter reside approximately fifteen minutes away from Mr. Chansley's mother's home in Phoenix, Arizona.

24. Mr. Chansley's maternal aunt and two cousins reside approximately 30 minutes from

Mr. Chansley's mother's home in Phoenix, Arizona.

25. Mr. Chansley's biological father has played virtually no role in the life of the Defendant and his whereabouts are unknown to the Defendant.

26. Mr. Chansley's step-father committed suicide years ago.

27. Mr. Chansley's immediate and extended family members all reside in close proximity to each other in Phoenix and have done so for virtually the entire life of the Defendant.

28. Arrangements have been made for Mr. Chansley to procure mental health care from a licensed psychiatrist in Phoenix, Arizona.

29. Prior to January 6, 2021, Defendant worked with behaviorally challenged children under a title which Defendant described as meaning "adult baby sitter."

30. Prior to January 6, 2021, Defendant also painted and wrote and self-published a science fiction book.

## ADDED INDICIA OF ABSENCE OF FLIGHT RISK

31. As previously noted for the benefit of the Court, the Defendant does not possess nor has the Defendant ever possessed a passport.

32. As previously noted for the benefit of the Court, the Defendant has never traveled internationally (except as directed by and during his tenure with the U.S. Armed Forces).

33. The Defendant speaks no foreign languages.

34. The Defendant is not possessed of the means to travel internationally.

35. The Government previously raised concern that the Defendant was a flight risk because his face was not known without face paint. The Government abandoned that concern. The Defendant's name, image, and face (with and without paint) have become inextricably and globally linked to the events of January 6, 2021.

36. The status of Mr. Chansley as a criminally accused is equally globally known.

37. While incarcerated, the Defendant has been a fully compliant and polite detainee.

38. While incarcerated, the Defendant has voluntarily and without incentive permitted himself to be debriefed multiple times by the Government. He has provided the Government with access to videos of significant import to the Government.

39. The Government has fully vetted the Defendant.

40. The mental health issues of the Defendant have been raised with the Court. The U.S. Armed Forces medical records memorializing psychological examinations conducted on the Defendant in 2006 have been provided to the Government, the Court and the psychologist tasked with conducting the psych examination of the Defendant in Englewood, Colorado on a date uncertain.

41. The Defendant has been removed from the Alexandria, Virginia facility for transport to Englewood, Colorado. The Defendant's exact whereabouts are unknown to Defense counsel during the U.S. Bureau of Prisons controlled transportation of the Defendant to Englewood, Colorado.

42. While no formal plea deal has been received from the Government to date, collaborative communication between Defendant's counsel and the Government pinpoint the range of sentencing recommended under the U.S. Sentencing Guidelines at a level significantly less than the maximum associated with any of the pending felony charges. As such, especially given the protracted period of solitary confinement endured to date by the Defendant, the time hanging over the head of the Defendant does not reasonably serve to incentivize the Defendant or anyone in like position to take flight.

KODNER WATKINS

By: */s/ Albert S. Watkins*
ALBERT S. WATKINS, MO#34553
1200 South Big Bend Boulevard
St. Louis, Missouri 63117
Phone:  (314) 727-9111
Facsimile:  (314) 727-9110
E-mail:  albertswatkins@kwklaw.net

## CERTIFICATE OF SERVICE

Signature above is also certification that on June 15, 2021, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court utilizing the CM/ECF system which will send notification of such filing to all parties of record.