UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| v. | Case No. 21-cr-3 (RCL) |
| **JACOB ANTHONY CHANSLEY,** | |
| *Defendant.* | |

## MEMORANDUM OPINION

Earlier this year, the Court denied defendant Jacob Anthony Chansley's motion for pre-trial release, finding that no conditions of release would reasonably assure the safety of the community or his appearance as required. *See United States v. Chansley*, No. 21-CR-3-RCL, 2021 WL 861079 (D.D.C. Mar. 8, 2021). Chansley now moves to reopen his detention hearing and to be released pending trial based on "new evidence and information" discovered after his first detention hearing. ECF No. 40. The Government opposes Chansley's motion, arguing that he has not put forth any new evidence warranting a reopening of the hearing. ECF No. 44. After Chansley replied, ECF No. 46, the Court ordered the parties to submit supplemental briefing on the issue of Chansley's flight risk, which neither party addressed in the initial filings. *See* ECF No. 47. Once the Court received the supplemental briefs, ECF Nos. 48, 50 & 51, it held a hearing on Chansley's motion.

Upon consideration of the parties' briefs, the arguments set forth and evidence proffered at the hearing, and the record herein, the Court will **DENY** Chansley's motion to reopen his detention hearing and for release from custody, ECF No. 40. For the reasons explained below, Chansley has not proffered any new information that has a "material bearing" on the issue whether any

1

conditions of release would reasonably assure that he does not flee pending trial. *See* 18 U.S.C. § 3142(f). Thus, even if the Court were to find that Chansley has proffered new information that has a "material bearing" on the issue of his dangerousness, the Court has no occasion to reconsider Chansley's flight risk, which was an independent justification for detaining him while he awaits his trial.

## I. BACKGROUND

The Court assumes familiarity with the facts and procedural history of this case as set forth in its March 8, 2021 Memorandum Opinion denying Chansley's first motion for pre-trial release. *See Chansley*, 2021 WL 861079, at *1–4. There, the Court found by clear and convincing evidence that no conditions of release would reasonably assure the public safety. *Id.* at *8–14. It also found by a preponderance of the evidence that no conditions of release would reasonably assure Chansley's appearance as required. *Id.* at *14–15. Accordingly, the Court denied Chansley's motion to revoke the magistrate judge's order of detention. *Id.* at *1; *see* 18 U.S.C. §§ 3142(e)(1) & 3145(b).

Now, four months later, Chansley moves to reopen his detention hearing and to be released pending trial. ECF No. 40. He argues that "new evidence and information" discovered since his first detention hearing shows that he would not pose a danger to the public if released. *See id.* In support of his motion, Chansley provides dozens of links to videos that he says confirms that law enforcement gave him permission to enter the U.S. Capitol building on January 6, 2021. *See* ECF No. 40 at 15–23. Defense counsel also represents that, after the first detention hearing, he discovered important information about the "flagpole" and "finial" that Chansley carried into the Capitol on January 6th. *Id.* at 38–39. Specifically, defense counsel says that the "finial" on Chansley's "flagpole" was "affixed to the pole with a zip tie" and thus could not have been used

2

as a weapon. *Id.*

The Government opposes Chansley's motion, arguing that he has not come forward with sufficient evidence to reopen his detention hearing. ECF No. 44. Alternatively, the Government argues that if the Court does reopen the detention hearing, it should find that Chansley "has not proven that he would not be a danger if released into the community." *Id.* at 7.

After Chansley replied, the Court ordered the parties to submit supplemental briefing on the issue of Chansley's flight risk. *See* ECF No. 47. In its Order, the Court noted that although the parties' briefs discuss at length the issue whether any conditions of release would reasonably assure the public safety, the briefs say nothing about Chansley's risk of flight. *Id.* at 1. And because the Court found his flight risk to be an independent justification for detaining Chansley pending trial in its March 8, 2021 ruling, the Court requested that the parties brief this issue as well. *Id.* at 1–2.

Chansley's supplemental filing on flight risk largely rehashes many of the arguments that he made at his first detention hearing. *See* ECF No. 48. He repeats that he has no criminal history, has no passport, and has lived in Phoenix, Arizona nearly his entire life. *Id.* at 5–8; *see* ECF No. 12 at 14–16. Chansley also proposes the same custodian (his mother) that the Court previously rejected at his first detention hearing. *See Chansley*, 2021 WL 861079, at *15 (explaining that the Court "is not persuaded that defendant's mother will ensure his compliance with any conditions of release imposed" given her repeated statements during an interview with 60 Minutes+ that "her son did nothing wrong").

Chansley does, however, proffer a few new facts regarding his risk of flight. At his first detention hearing, Chansley represented that his mother lives in Phoenix and that he could live with her while released pending trial. ECF No. 12 at 14. Now, defense counsel adds that many of

Chansley's close relatives also live in the Phoenix area and have resided there for most of Chansley's life. *See* ECF No. 48 at 7–8. Those relatives include Chansley's maternal grandfather, maternal step-grandmother (as well as her granddaughter and grandson), maternal uncle, maternal aunt, two cousins, and one of Chansley's brothers. *Id.* Defense counsel further represents that, if released to live in Phoenix pending trial, "[a]rrangements have been made for Mr. Chansley to procure mental heath care from a licensed psychiatrist" there. *Id.*

Defense counsel also introduced new information regarding Chansley's flight risk at the hearing. Counsel first stated that if the Court would not release Chansley to live in Phoenix pending trial, there are "alternative arrangements available for [Chansley] in a secure location in St. Louis" near defense counsel's office. Mot. Hr'g Tr. at 11:9–11.[1] Defense counsel added that he "would be happy to talk [to the Court] in detail about [those arrangements] off the . . . public record to avoid disclosure of names and locations." *Id.* at 11:13–15. Additionally, defense counsel represented that he has arranged for Chansley to receive healthcare and mental health care in either Phoenix or St. Louis. *Id.* at 11:16–18.

In response, the Government maintains that Chansley has not proffered any new information on the issue of flight risk that warrants a reopening of the detention hearing. *See* ECF No. 50-1; *see also* Mot. Hr'g Tr. at 15:25–16:1–2 ("Counsel for the defendant has been talking for more than 20 minutes and hasn't said a single thing that he hasn't said before.").

Chansley's motion is now ripe for consideration.

---

[1] By separate Order today, the Court has directed the Clerk of Court to file the transcript of the June 30, 2021, motion hearing on the public docket. This transcript is only a "rough" transcript. Some words, including names, may be spelled incorrectly.

## II. LEGAL STANDARD

The Bail Reform Act provides that after a Court holds a detention hearing and rules on a defendant's motion for pre-trial release, the Court may "reopen" the hearing at "any time before trial," if it finds that "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

Because the Bail Reform Act does not define the term "material bearing," the Court must look to the ordinary meaning of those words at the time the statute was enacted to discern their meaning. *See, e.g., Tanzin v. Tavnir*, 141 S. Ct. 486, 491 (2020) ("Without a statutory definition, we turn to the phrase's plain meaning at the time of enactment."). This Court undertook the same inquiry last month in *United States v. Worrell*, No. 21-CR-292-RCL, 2021 WL 2366934 (D.D.C. June 9, 2021).

There, it explained that the phrase "material bearing" has two possible meanings. *Id.* at *8. The phrase could either refer to information that simply *relates* in some way (i.e., has a logical connection) to the pre-trial detention inquiry. *Id.* Or, "material bearing" could refer to information that, if true, would *actually affect* the outcome of the detention inquiry. *Id.* (citing *Material*, BLACK'S LAW DICTIONARY (10th ed. 2014) (listing definitions for "material" as either "having some logical connection with the consequential facts" or, alternatively, "of such a nature that knowledge of the item would affect a person's decision-making; significant, essential")).

If we accept the first, more easily satisfied definition, the Court explained, then a defendant could reopen his detention hearing simply by introducing new information that has some logical relationship to the detention inquiry. *Id.* But if the phrase bears the latter, more stringent definition

to satisfy, then a defendant must introduce new information that is not only logically related to the detention inquiry, but that actually affects the decision whether to detain the defendant. *Id.*

To resolve this ambiguity, the Court found instructive Congress's use of the word "bearing." *See id.* at *9. Because "bearing" "already connotes a connection or relationship," the Court explained, the word "material" must mean something more than just a logical connection. *Id.* (citing *Qi-Zhuo v. Meissner*, 70 F.3d 136, 139 (D.C. Cir. 1995) ("[A]ll words in a statute are to be assigned meaning.")). Thus, the Court concluded, the phase "material bearing" must be defined by the second of the two possible definitions; it must refer to information that actually affects the Court's decision whether to detain the defendant pending trial. *Id.*

To reopen a detention hearing, then, a defendant must proffer evidence that, if true, affects the outcome of the Court's pre-trial detention inquiry under the Bail Reform Act. *See id.*; *see also United States v. Smith*, 79 F.3d 1208, 1209–10 (D.C. Cir. 1996) (holding that both parties may proceed by proffer at a pre-trial detention hearing). With this definition of "material bearing" in mind, the Court now turns to the merits of Chansley's motion, ECF No. 40.

### III. DISCUSSION

After Chansley's first detention hearing, the Court found by clear and convincing evidence that no conditions of release could reasonably assure the safety of the community. *See Chansley*, 2021 WL 861079, at *8–14. It also found by a preponderance of the evidence that no conditions of release would reasonably prevent Chansley from fleeing. *Id.* at *14–15. Because the Court relied on these two, independent justifications for detaining Chansley pending trial, a finding today that conditions of release *would* reasonably assure the public safety would not warrant Chansley's release unless the Court were to *also* find that conditions of release would prevent Chansley from fleeing. In other words, Chansley's challenges to the Court's initial finding on dangerousness are

meaningless unless he can also convince the Court to revisit and reverse its initial finding on flight risk. To do so, Chansley first must present new information that has a "material bearing" on the issue of his flight risk. 18 U.S.C. § 3142(f).

Though Chansley offered some new information in his filings and at the hearing, none of this information has a "material bearing" on the question whether any condition or combination of conditions could reasonably assure his appearance as required. 18 U.S.C. § 3142(f). Defense counsel first represents that many of Chansley's relatives (in addition to his mother) live in the Phoenix area and have lived there nearly his entire life. ECF No. 48 at 8–9. This information certainly bears a *logical connection* to the issue whether any conditions would prevent Chansley from fleeing if released pending trial. Indeed, the Bail Reform Act instructs courts to consider a defendant's family ties to an area when evaluating his risk of flight. *See* 18 U.S.C. § 3142(g)(3)(A). But this information does not *actually affect* the Court's inquiry, because his family ties do not mitigate any of the other concerns the Court identified in its March 8, 2021 Memorandum Opinion. Those include Chansley's "ability to travel long distances using untraceable methods" and his ability to "quickly raise large sums of money for travel through non-traditional sources." *Chansley*, 2021 WL 861079, at *14–15. As Chansley's family connections have not prevented him from traveling undetected in the past, the Court is unpersuaded that they will prevent him from doing so again in the future. Moreover, Chansley maintains that if released to Phoenix pending trial, he would return home to live with his mother. *See* ECF No. 48 at 7. But the Court already rejected that arrangement as insufficient, and Chansley does not propose a new custodian. *See Chansley*, 2021 WL 861079, at *15. For these reasons, Chansley's family ties to Phoenix do not have a "material bearing" on the Court's flight-risk analysis.

Nor does defense counsel's passing reference to a "secure location" in St. Louis where

Chansley could live if released pending trial actually affect the Court's analysis on the issue of flight risk. *See* Mot. Hr'g Tr. 11:9–11. Understandably, defense counsel stated that he would not provide further details about that arrangement on the public record "to avoid disclosure of names and locations." *See id.* at 11:13–15. But since the hearing, which took place nearly one week ago, defense counsel has not provided any information to the Court regarding that "secure location." Without information on the arrangements that have been made, the Court is unable to assess whether this release plan would reasonably assure Chansley's appearance as required.

Finally, while the Court takes seriously defense counsel's representations that Chansley's mental health has declined while in jail, the fact that arrangements have been made for Chansley to obtain mental health care if released in Phoenix or St. Louis does not have a "material bearing" on the issue whether any conditions of release would reasonably assure that Chansley does not flee pending trial. *See* ECF No. 40 at 34; Mot. Hr'g Tr. 11:16–18. In its March 8, 2021 ruling, the Court did not consider Chansley's mental health when evaluating his risk of flight. *See Chansley*, 2021 WL 861079, at *14–15. Instead, as noted above, the Court pointed to Chansley's "ability to travel long distances using untraceable methods" and his ability to "quickly raise large sums of money for travel through non-traditional sources" to find by a preponderance of the evidence that no conditions of release would reasonably assure his appearance as required. *Id.* at *15.

In sum, Chansley has not provided any new information that has a "material bearing" on the issue whether any condition or combination of conditions would reasonably assure his appearance as required. 18 U.S.C. § 3142(f). Without this necessary showing, the Court will not revisit its prior finding that no conditions of release would reasonably prevent him from fleeing. *See Chansley*, 2021 WL 861079, at *14–15. Accordingly, the Court must deny Chansley's motion, ECF No. 40.

## IV. CONCLUSION

For these reasons, the Court will **DENY** by separate Order Chansley's motion to reopen his detention hearing and for release from custody, ECF No. 40.

Date: July __6_ 2021

                                                                                          Hon. Royce C. Lamberth
                                                                                          United States District Judge