UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-cr-003 (RCL) |
| v. : | |
| : | |
| JACOB CHANSLEY, : | |
| : | |
| Defendant. : | |

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT TWO:
OBSTRUCTION OF AN OFFICIAL PROCEEDING**

The United States of America, by and through the Acting United States Attorney for the District of Columbia, hereby respectfully submits this opposition to Jacob Chansley's ("the defendant") Motion to Dismiss Count Two: Obstruction of an Official Proceeding (ECF No. 51).

Let us begin where the defense motion ends: with the argument that no court has ever encountered the question whether an "official proceeding," as that term is used in 18 U.S.C. § 1512(c), describes the Certification of the Electoral College vote. ECF 54, at 12. That observation lacks legal significance. The statute's text—which prohibits specified conduct targeting "a proceeding before the Congress," 18 U.S.C. § 1515(a)(1)(B)—plainly encompasses the criminal acts committed by the defendant and others when they attempted to, and did, obstruct the Congress's certification of the Electoral College vote on January 6, 2021.

The defendant's motion should be denied because the indictment sufficiently advises the defendant of the charges against him and because the congressional certification of the Electoral College Vote—which is required by the Constitution and governed by precise statutory requirements—is an official proceeding under Section 1512(c).

1

## PROCEDRUAL HISTORY

On January 11, 2021, the Grand Jury returned an indictment charging the defendant with, *inter alia*, obstruction of the Electoral College vote that took place at the United States Capitol on January 6, 2021. He was also charged with interfering with law enforcement during the course of a civil disorder, and unlawful presence on Capitol grounds and inside the Capitol building.

On June 29, 2021, the defendant filed this motion to dismiss Count Two of the indictment, which charges him with obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2). For the reasons stated below, the defendant's motion is without merit and should be denied.

## LEGAL STANDARD

A defendant may move to dismiss an indictment or count thereof for failure to state a claim prior to trial. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). The government agrees with the defendant that "[a]n indictment must be viewed as a whole and the allegations must be accepted as true in determining if an offense has been properly alleged." *United States v. Bowdin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.* An indictment must contain every element of the offense charged, if any part or element is missing, the indictment is defective and must be dismissed." *See United States v. Hillie*, 227 F. Supp. 3d 57, 70 (D.D.C. 2017).

Section 1512(c)(2) of Title 18 of the U.S. Code provides that "[w]hoever corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both." The relevant "Definitions" provision, 18 U.S.C. § 1515, states that "the term 'official proceeding' means— (A) a proceeding before a judge

or court of the United States … or a Federal grand jury;" (B) a proceeding before the Congress; (C) a proceeding before a Federal Government agency which is authorized by law; or (D) a proceeding involving the business of insurance … before any insurance regulatory official or agency…." 18 U.S.C. § 1515(a)(1) (emphasis added).

Federal Rule of Criminal Procedure 7(c)(1) governs the "Nature and Contents" of an indictment. The rule states, in relevant part, that "[t]he indictment … must be a plain, concise, and definite written statement of the essential facts constituting the offense charged," and that "[f]or each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated."

## ARGUMENT

The defendant's motion makes two arguments: (1) the indictment does not sufficiently apprise him of the crime with which he is charged; and (2) the certification of the Electoral College vote on January 6, 2021 is not an "official proceeding" contemplated by 18 U.S.C. 1512(c). Both arguments are without merit, and the motion should therefore be denied.

**I.   Count Two of the indictment amply notifies the defendant of the charge alleged against him.**

A facially valid indictment is intended to guarantee at least two core constitutional protections. The first is notice, as provided by the Sixth Amendment: an "indictment's main purpose is to inform the defendant of the nature of the accusation against him," *United States v. Hillie*, 227 F. Supp. 3d 57, 69 (D.D.C. 2017) (citing *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001) (internal quotation marks and citation omitted). The second preserves the Fifth Amendment's protections against abusive criminal charging practices; specifically, that a criminal defendant can only be prosecuted for offenses that a grand jury has actually passed up on, and that

3

a defendant who is convicted of a crime so charged cannot be prosecuted again for that same offense. *Id.* at 70 (citing *Stirone v. United States*, 361 U.S. 212, 218, (1960) (explaining that the Grand Jury Clause of the Fifth Amendment "limit[s] [a defendant's] jeopardy to offenses charged by a group of his fellow citizens acting independently"); see also *Puerto Rico v. Sanchez Valle*, 136 S. Ct. 1863, 1867 (2016) ("The Double Jeopardy Clause of the Fifth Amendment prohibits more than one prosecution for the 'same offen[s]e.'"). The test for sufficiency is whether it is fair to require the accused to defend himself on the basis of the charge as stated in the indictment. *United States v. Conlon*, 628 F.2d 150, 155 (D.C. Cir. 1980). Sufficiency depends upon whether the indictment "clearly informs the defendant of the precise offense of which he is accused so that he may prepare his defense." *Id*.

Here, Count Two of the indictment sufficiently informs the defendant of the basis of the charge against him. The indictment identifies the relevant date—on or about January 6, 2021. ECF No. 3. The indictment lists the prohibited conduct the defendant engaged in, specifically engaging in an act of civil disorder, threatening Congressional officials, unlawfully remaining in a restricted building without lawful authority, and engaging in disorderly and disruptive conduct. *Id.* It alleges the mens rea requirement from the statute. *Id.* And, most importantly for the present motion, it identifies the official proceeding he obstructed—namely, a proceeding before Congress. *Id.* That amply satisfies the dictates of Fed. R. Crim. 7(c).

Further, the defendant has received discovery in this case related to his conduct on January 6, 2021, to include the grand jury materials in this case disclosed pursuant to this Court's order. The indictment, and those materials, fully apprise the defendant of the proceeding that he allegedly obstructed—the Joint Session of Congress, which convened to certify the 2020 presidential election. See, e.g., *United States v. Williamson*, 2014 WL 12695537, at *7 (D.D.C. Oct. 20, 2014)

("If the indictment is sufficiently specific or if the requested information is available in some other form such as through discovery, then a bill of particulars is not required."). Due to the fact that this was a Joint Session of Congress, it was the only Congressional proceeding occurring on the date alleged in the indictment, as a matter of public record. In light of this discovery, the defendant has ample information to understand the nature of the charge against him, prepare his defense in this case, and identify any applicable double-jeopardy defense in a future proceeding. No pleading defect accordingly exists in Count Two.

**II.     The certification of the Electoral College vote is an official proceeding**

The defendant argues that Congress's certification of the Electoral College vote on January 6, 2021 does not qualify as an "official proceeding" for purposes of 18 U.S.C. § 1512(c)(2). That argument lacks merit.

**A.  Background**

The Constitution and federal statutory law require that both Houses of Congress meet to certify the results of the Electoral College vote. Two separate provisions in the Constitution mandate that the Vice President while acting as the President of Senate "shall, in the Presence of the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted." U.S. Const. art. II, § 1, cl. 3; U.S. Const amend. XII. Under the Electoral Act of 1887, a Joint Session of the Senate and the House of Representatives must meet at "the hour of 1 o'clock in the afternoon" on "the sixth day of January succeeding every meeting of the electors." 3 U.S.C. § 15. Section 15 details the steps to be followed: the President of the Senate opens the votes, hands them to two tellers from each House, ensures the votes are properly counted, and then opens the floor for written objections, which must be signed "by at least one Senator and one Member of the House of Representatives." *Id.*  The President of the Senate is empowered to "preserve order"

5

during the Joint Session.  3 U.S.C. § 18.  Upon a properly made objection, the Senate and House of Representatives withdraw to consider the objection; each Senator and Representative "may speak to such objection . . . five minutes, and not more than once."  3 U.S.C. § 17.  The Electoral Act, which specifies where within the chamber Members of Congress are to sit, requires that the Joint Session "not be dissolved until the count of electoral votes shall be completed and the result declared."  3 U.S.C. § 16.

The obstruction statute with which the defendant is charged prohibits corruptly obstructing, influencing, or impeding any official proceeding.  18 U.S.C. § 1512(c)(2).  An official proceeding for purposes of § 1512(c)(2) is defined as:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
>
> (B) *a proceeding before the Congress*;
>
> (C) a proceeding before a Federal Government agency which is authorized by law; or
>
> (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce[.]

18 U.S.C. § 1515(a)(1) (emphasis added).

### B.  Certification of the Electoral College vote is a proceeding before the Congress

The certification of the Electoral College vote as set out in the Constitution and federal statute is a "proceeding before the Congress," 18 U.S.C. § 1515(a)(1)(B), and, therefore, an "official proceeding" for purposes of 18 U.S.C. § 1512(c)(2).  That conclusion flows principally from the obstruction statute's plain text.  Skipping past the text, the defendant argues that the term "official proceeding" means a formal hearing before "a tribunal," some sort of investigative

6

proceeding, or involving the administration of justice. Def. Mot, at 2, 6-7.  That argument is incorrect, but even if it were not, it would not disqualify the Electoral College vote certification. The defendant's final argument—that that Count Two overcharges the defendant for his conduct—is similarly flawed.

    *1. "Official Proceeding," By the Plain Language of the Statute, Encompasses The Joint Congressional Session Certifying the Electoral College Vote.*

Understanding what qualifies as an official proceeding "depends heavily on the meaning of the word 'proceeding'" because "official proceeding" is defined "somewhat circularly" as, among other things, a congressional "proceeding." *See United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013).   The certification of the Electoral College vote constitutes a "proceeding" under any interpretation of that term.

In its broadest and most "general sense," a proceeding refers to "[t]he carrying on of an action or series of actions; action, course of action; conduct, behavior." *Id.* (quoting *Proceeding,* Oxford English Dictionary, *available at* http://www.oed.com).  The defendant does not meaningfully contest the contention that the certification of the Electoral College vote, which involves a detailed "series of actions" outlining how the vote is opened, counted, potentially objected to, and ultimately certified, is a "proceeding"—and indeed an "official proceeding"—under that general definition.  And there is good reason to construe "proceeding" as used in 18 U.S.C. § 1515 in this fashion.  Section 1515's text encompasses not only congressional proceedings, but judicial proceedings, grand jury proceedings, any legally authorized proceedings before federal government agencies, and proceedings "involving the business of insurance."  18 U.S.C. § 1515(a)(1); *see* S. Rep. No. 97-532, at 17 (1982) (noting that the "term 'official proceeding'" in the obstruction statute is "defined broadly").

7

But even if the "legal—rather than the lay—understanding" of proceeding governs Section 1515's interpretation, *see Ermoian*, 752 F.3d at 1170, the Electoral College vote certification qualifies. This narrower definition includes the "business conducted by a court or other official body; a hearing." Black's Law Dictionary, "proceeding" (11th ed. 2019). Taken with its modifier "official," the term proceeding thus "connotes some type of formal hearing." *Ermoian*, 752 F.3d at 1170; *see United States v. Ramos*, 537 F.3d 439, 462 (5th Cir. 2008) (the "more formal sense" of "official proceeding" is "correct in the context of § 1512"). For example, in cases assessing whether a law enforcement investigation amounts to an "official proceeding" as defined in Section 1515—including the cases relied upon by the defendant—courts analyze the degree of formality involved in an investigation. *See, e.g.*, *United States v. Sutherland*, 921 F.3d 421, 426 (4th Cir. 2019) (FBI investigation not an "official proceeding" because that term "implies something more formal than a mere investigation"), *cert. denied*, 140 S. Ct. 1106 (2020); *Ermoian*, 752 F.3d at 1170-72 (same); *United States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009) (internal investigation conducted by a review panel within the Bureau of Prisons was an "official proceeding" because the review panel's "work [was] sufficiently formal"); *Ramos*, 537 F.3d at 463 (internal investigation conducted by Customs and Border Patrol not an "official proceeding" because that term *"*contemplates a formal environment"); *United States v. Dunn*, 434 F. Supp. 2d 1203, 1207 (M.D. Ala. 2006) (investigation conducted by Bureau of Alcohol, Tobacco, and Firearms not an "official proceeding" because that term encompasses "events that are best thought of as hearings (or something akin to hearings)"); *see also United States v. Kelley*, 36 F.3d 1118, 1127 (D.C. Cir. 1994) (holding that a "*formal* investigation" conducted by the Officer of the Inspector General at the Agency for International Development qualified as a "proceeding" for purposes of 18 U.S.C. § 1505) (emphasis added).

The formality involved in the certification of the Electoral College vote places it "comfortably within the category" of an official proceeding. *See Perez*, 575 F.3d at 169. Few events are as solemn and formal as a Joint Session of the Congress. That is particularly true for the certification of the Electoral College vote, which is expressly mandated under the Constitution and federal statute. Required by law to begin at 1:00 p.m. on January 6 following a presidential election, the certification of the Electoral College vote is both a "hearing" and "business conducted by . . . [an] official body." *See* Black's Law Dictionary, *supra*. The Vice President, as the President of the Senate, serves as the "presiding officer" over a proceeding that counts votes cast by Electors throughout the country in presidential election. 3 U.S.C. § 15. As in a courtroom, Members may object, which in turn causes the Senate and House of Representatives to "withdraw" to their respective chambers so each House can render "its decision" on the objection. *Id.* And just as the judge and parties occupy specific locations in a courtroom, so too do the Members within the "Hall." *See* 3 U.S.C. § 16 (President of the Senate is in the Speaker's chair; the Speaker "immediately upon his left"; the Senators "in the body of the Hall" to the right of the "presiding officer"; the Representatives "in the body of the Hall not provided for the Senators"; various other individuals "at the Clerk's desk," "in front of the Clerk's desk," or "upon each side of the Speaker's platform"). The Electoral College vote certification, moreover, must terminate with a decision: no recess is permitted until the "the count of electoral votes" is "completed," and the "result declared." *Id.* In short, the certification of the Electoral College vote is a "proceeding before the Congress." *See* 18 U.S.C. § 1515(a)(1)(B).

> 2. *Defendant's Reading of the Statute Lacks Textual Support and Contravenes Legislative Intent.*

Ignoring the plain text, the defendant argues that the adjective "official" and the preposition "before" limit the definitions in Section 1515 to proceedings in front of an agency "sitting as a

9

tribunal." Def. Mot, at 6-7. As an initial matter, it is difficult to imagine a proceeding more "official" than a constitutionally and statutorily prescribed Joint Session of Congress. Whatever the merits of the defendant's argument for other provisions in Section 1515(a)(1), it finds no textual support when applied to Section 1515(a)(1)(B), which speaks broadly of a proceeding "before the Congress." Had Congress wanted to import a definition that more closely resembled a quasi-adjudicative setting, it needed to look only a few provisions away to 18 U.S.C. § 1505, which criminalizes obstruction of "the due and proper administration of the law under which any pending proceeding is being had" by a federal department or agency. Section 1505 shows that Congress knew how to limit an obstruction prohibition to such settings, and that it could have also done so in the text of Section 1515(a)(1)(B). But it did not. Instead, Congress enacted language—"a proceeding before the Congress"—to cover a broader range of proceedings than the "inquir[ies] and investigation[s]" envisioned in Section 1505. That distinctively broader definition includes the Electoral College vote certification. *See, e.g., Russello v. United States,* 464 U.S. 16, 23 (1983) ("We refrain from concluding here that the differing language in the two subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship.").

The defendant relatedly argues that the phrase "official proceeding" requires "some formal convocation of the agency in which parties are directed to appear." Def. Mot, at 7 (citation omitted). But the certification of the Electoral College vote plainly involves a "formal convocation" of Congress to assess the Electoral College vote and "declare[]" the "result" of the presidential election, 3 U.S.C. § 16.

Finally, the defendant argues that 18 U.S.C. 1512(c) solely prohibits conduct that affects the administration of justice, and therefore "proceedings" should encompass only "investigations

10

and legal proceedings related to a criminal investigation." Def. Mot, at 7. But Congress enacted a separate provision to punish the obstruction of "communication of information relating to a violation of any criminal statute of the United States." 18 U.S.C. § 1510(a). Defendant's restrictive definition would accordingly, and impermissibly, render Section 1512 superfluous. See *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.").

Switching gears, the defendant invokes "legislative intent" behind the Sarbanes-Oxley Act of 2002 to argue that the certification of the Electoral College vote is not an "official proceeding" because it was not a federal investigation. Def. Mot., at 9-10. That approach fails in three respects. First, it is methodologically flawed. To determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *Levin v. United States*, 568 U.S. 503, 513 (2013) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). In ordinary parlance, a gathering of the full Congress to certify the Electoral College vote is a congressional proceeding, a proceeding before the Congress. Because Section 1515(a)(1)(B)'s words "are unambiguous, the judicial inquiry is complete." See *Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020) (internal quotation marks omitted). The defendant offers no rationale for breezing past the statute's plain text to reach for other interpretive tools.

The other statutory tools on which the defendant purports to rely do not aid his argument. For example, the defendant suggests that Congress intended the obstruction statute to "provide for criminal prosecution and enhanced penalties of persons who defraud investors in publicly traded securities or alter or destroy evidence in certain Federal investigations." Def. Mot., at 10. Putting aside that the "best evidence of [a statute's purpose] is the statutory text adopted by both Houses of Congress and submitted to the President," *West Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83,

11

98 (1991), the obstruction statute's legislative history confirms that Congress intended the statute to reach "broadly," and to encompass "the rare type of conduct that is the product of the inventive criminal mind." S. Rep. No. 97-532, at 17-18.

The defendant's effort to invoke other provisions in Chapter 73 has even less bearing on the plain meaning of § 1512(c)(2). Def. Mot. at 9 (citing 18 U.S.C. §§ 1503, 1504, 1507, 1521). If anything, those neighboring provisions—which criminalize obstruction of other types of investigations and protect judges, jurors, witnesses, and the like—underscore that Congress robustly sought to penalize obstructive conduct across a vast range of settings. That Congress wished to penalize efforts to obstruct everything from a federal audit and a bankruptcy case to an examination by an insurance regulatory official only crystalizes the government's construction here: the acts of obstructing, influencing, or impeding—rather than the particular type of hearing—lie at "'the very core of criminality' under the statute[s]." *Williamson*, 903 F.3d at 131.

The defendant also contends that Section 1512's title—"Tampering with a witness, victim, or an informant"—implies that the "official proceeding" definition in Section 1515 must relate to the administration of justice, and does not cover the Electoral College vote certification. Def. Mot., at 7. Even putting aside the defendant's selective invocation of the statutory title—he urges this Court to adopt the reasoning in cases like *Ermoian* holding that an "official proceeding" does not include a law enforcement investigation even though the title's reference to "an informant" would clearly suggest otherwise—his contention runs headlong into "the wise rule" that neither "the title of a statute" nor "the heading of a section" can "limit the plain meaning of the text." *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528-29 (1947). Indeed, the specific statutory provision under which the defendant is charged, 18 U.S.C. § 1512(c)(2), explicitly reaches beyond tampering: it "operates as a catch-all to cover otherwise obstructive behavior that

might not constitute a more specific" obstruction offense. *United States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015) (quoting *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2104)).

Finally, the defendant's narrowed reading of "proceeding before the Congress" in 18 U.S.C. § 1515(a)(1)(B)—in essence, importing an extra-textual "administration of justice" requirement—would undercut the broad statute that Congress enacted. In the defendant's view, for example, an individual who threatened a Senator and a Representative with injury unless each agreed to object to the Electoral College certification—even though each Member knew that the objections were frivolous—would not amount to obstruction. Nor would it appear to cover an individual who paid one of the tellers—who are appointed by the Senate and House of Representatives to handle the Electoral College votes—to falsify or destroy votes. Indeed, other than some oblique references to congressional committees investigating violations of the law,[1] the defendant does not explain which congressional proceedings would qualify for protection under his narrowed definition, in which "a violation of the law where witnesses are subpoenaed to appear and give testimony or to provide relevant evidence." Def. Mot., at 12. That crabbed approach fails to recognize that the certification of the Electoral College vote is an official proceeding that is "crucial to the conduct of government" and therefore "entitled to go forward free of corrupting influences that not only delay [it] but increase the chances of false and unjust outcomes." *Sutherland*, 921 F.3d at 426. Under any permissible construction of the phrase "proceeding before the Congress," the Electoral College vote certification falls squarely within it.

> 3. *In Any Event, The Certification of the Electoral College Vote Qualifies as an Adjudicative Proceeding.*

---

[1] The defendant does not grapple with the anomalous result that follows from his argument: an investigation by a committee—not even a full House, let alone both Houses—would qualify as a "proceeding before the Congress," but a constitutionally required Joint Session to resolve disputes over and ultimately certify the result of a presidential election would not.

The defendant's challenge fails even if he were correct—and he is not—that for a proceeding to constitute an "official proceeding" under the obstruction statute, that proceeding must be investigative or "before a tribunal." Far from a routine, ministerial function, the certification of the Electoral College vote comprises features that resemble an adjudicative proceeding. It involves the convening of a Joint Session of Congress, a deliberative body over which a government officer, the Vice President as President of the Senate, "presid[es]." 3 U.S.C. § 15. That body convenes to render judgment on whether to certify the votes cast by Electors in the presidential election.  As in an adjudicative setting, parties may lodge objections to the certification, and if any such objection is lodged, each House must consider the objection and make a "decision" whether to overrule or sustain it. *Id.*  And just as a jury does not (barring a mistrial) recess until it has a reached a verdict, the Joint Session cannot "be dissolved" until it has "declared" a "result."  3 U.S.C. § 16.

The defendant implies that courts have agreed with his narrowed approach that the proceeding must be investigative or be quasi-judicial in nature. Def. Mot., at 6-7. As noted above, however, those cases addressed an entirely different question, namely, whether law enforcement investigations qualified as "official proceedings" under a subsection defining that term as a "proceeding before a Federal Government agency which is authorized by law." 18 U.S.C. § 1515(a)(1)(C). Those courts grappled with questions, such as when an agency investigation is a proceeding; whether the requirement in § 1512(f)(1) that a proceeding "need not be pending or about to be instituted at the time of the offense" as applied to agency investigations would reach "conduct that occurred even pre-criminal-investigation," *Ermoian*, at 752 F.3d at 1172; and whether the "official" modifier "implies something more formal than a mere investigation," *Sutherland*, 921 F.3d at 426, that do not arise here.  The certification of the Electoral College vote

is a congressional proceeding, not an investigation, and involves a degree of formality distinct from any agency investigations. And, in any event, the statutory definition—a "proceeding before the Congress"—is phrased more broadly than the definition at issue in those decisions.

Defendant observes that no judicial decision has applied Section 1512(c) to the obstruction of a congressional function. Def. Mot., at 12. As documented above, however, the statute's plain text—which prohibits specified conduct targeting "a proceeding before the Congress," 18 U.S.C. § 1515(a)(1)(B)—provided him with more than "a fair warning . . . of what the law intends to do if a certain line is passed." *Arthur Andersen LLP v. United States*, 544 U.S. 696, 703 (2005) (citation omitted).

    4. *Defendant's "Overcharging" Allegation Lacks Merit.*

Finally, the defendant accuses the government of "over charging a person for conduct that is more specifically proscribed elsewhere" and contends that he only should have been charged under "other statutes." Def. Mot., at 12. The premise that claim is flawed. The mere fact that multiple criminal statutes apply to an individual's conduct does not render prosecution under one (or more) of those statute suspect; indeed, "overlap" is "not uncommon in [federal] criminal statutes." *Loughrin v. United States*, 573 U.S. 351, 358 n.4 (2014); *accord Hubbard v. United States*, 514 U.S. 695, 714 n.14 (1995) (opinion of Stevens, J.) ("Congress may, and often does, enact separate criminal statutes that may, in practice, cover some of the same conduct."); *see also United States v. Batchelder*, 442 U.S. 114, 123 (1979) ("So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied.").

In any event, whether or not the defendant faces potential criminal penalty under another criminal statute has no bearing on whether the government properly charged 18 U.S.C. §

1512(c)(2) in this case. "[W]hen an act violates more than one criminal statute, the Government may prosecute under either." *Batchelder*, 442 U.S. at 123-124.

## CONCLUSION

For the foregoing reasons, and any additional reasons that may be cited at a hearing on this motion, the government respectfully requests the defendant's motion be denied.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793


By: _____/s/_____
KIMBERLY L. PASCHALL
Assistant United States Attorney
D.C. Bar 1015665
U.S. Attorney's Office
555 4th Street, N.W., Room 4116
Washington, D.C. 20530
202-252-2650
Kimberly.Paschall@usdoj.gov