**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **v.** | Case No. 21-cr-3 (RCL) |
| **JACOB ANTHONY CHANSLEY,** | ~~**FILED UNDER SEAL**~~ |
| *Defendant.* | Unsealed 9/10/21 |
| | Liza C. Lorette, U.S.D.P. |

## MEMORANDUM OPINION AND ORDER

Twice, this Court has denied defendant Jacob Anthony Chansley's requests for pre-trial release. This Court denied Chansley's first request after finding that no conditions of release would reasonably assure either the safety of others and the community or his appearance as required. *See United States v. Chansley*, No. 21-CR-3-RCL, 2021 WL 861079, at *1 (D.D.C. Mar. 8, 2021). After Chansley moved to reopen his detention hearing, the Court again denied Chansley's request for release because he failed to proffer new information with a "material bearing" on his flight risk. *See United States v. Chansley*, No. 21-CR-3-RCL, 2021 WL 2809436, at *1 (D.D.C. July 6, 2021). Now Chansley moves for release for a third time, this time with a new proposed plan for supervision. ECF No. 67. The government opposes his motion. ECF No. 68. While Chansley initially moved for release pending trial, he has subsequently pleaded guilty to Count Two of his Indictment. ECF No. 69. Accordingly, this Court will evaluate his motion pursuant to the legal standards governing release pending sentencing.

Upon consideration of the parties' briefs, the arguments offered at the hearing, and the record herein, the Court will **DENY** Chansley's motion for release from custody pending sentencing.

## I. BACKGROUND

This Court has set forth the facts and procedural history of the case in its first Memorandum

Opinion denying Chansley's motion for pre-trial release. *See Chansley*, 2021 WL 861079, at *1–

4. After his arrest, a magistrate judge ordered Chansley detained pending trial. *Id.* Chansley moved

for this Court to revoke the detention order and release him. *Id.* When evaluating his request, the

Court found by clear and convincing evidence that no condition or combination of conditions

would reasonably assure the safety of the community. *Id*. at *8–14. It also found by a

preponderance of the evidence that there was no condition or combination of conditions that would

reasonably assure Chansley's appearance as required—in other words, that he was not a flight risk.

*Id*. at *14–15. The Court consequently denied Chansley's motion for pre-trial release. *Id*. at *1.

Chansley then moved to reopen his detention hearing and be released pending trial. ECF

No. 40. Evaluating this motion, the Court found that Chansley had not provided any new

information with a "material bearing" on whether there was any condition or combination of

conditions that would reasonably assure that he would not flee pending trial. *Chansley*, 2021 WL

2809436, at *1. Because Chansley failed to provide this required information, the Court denied his

motion. *Id*. at *5. And since Chansley was required to proffer new information with a "material

bearing" on *both* the issue of his dangerousness *and* the issue of his potential flight risk, the Court

did not address his dangerousness. *Id*. at *1.

Now Chansley moves again in a third attempt to secure immediate release. ECF No. 67.

This Court notes that Chansley's motion was filed as a motion for pre-trial release. *Id*. However,

after Chansley filed his motion and the government filed its opposition, Chansley pleaded guilty

to Count Two of his Indictment and is currently awaiting sentencing. ECF No. 69 at 1. At

Chansley's plea-agreement hearing, his counsel requested that the Court "recharacterize" Chansley's motion for pre-trial release as a motion for *pre-sentencing* release. The Court advised counsel that it would take Chansley's motion under advisement to determine whether he qualified for pre-sentencing release, which is governed by different legal standards.

In Chansley's motion, he references his psychological evaluation report and argues that it is important for his continued mental competency that he avoids certain psychological "triggers." ECF No. 67-1 at 1. He mentions his desire to visit his grandfather, whose ill health he considers a triggering event. *Id.* at 3. Chansley also argues that his current detention prevents him from having "meaningful protracted meetings" with his counsel to review discovery evidence. *Id.* at 4.

The remainder of Chansley's motion presents a potential plan for release, detailing where and with whom he would live. *Id.* at 4–7. Chansley's counsel has "identified" a potential hideaway location for Chansley to live pending sentencing, which he describes in detail. *Id.* at 5. The owners of the premises are personal acquaintances of Chansley's counsel. *Id.* Chansley further lists a psychotherapist, a doctor, and two former law enforcement officials in his motion. *Id.* at 7. All are personally known to his counsel. *Id.* At Chansley's plea-agreement hearing, his counsel further offered to share responsibility for Chansley if he were released.

In response, the government opposes Chansley's motion, arguing that none of the factors above affect the Court's analysis under 18 U.S.C. § 3142(g). ECF No. 68-1 at 1.

## II. LEGAL STANDARDS

Before a guilty plea, "liberty is the norm and detention prior to trial . . . is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). But once a defendant is convicted or pleads guilty, detention is subject to a different legal standard. *United States v. Wiggins*, No. 19-CR-258-KBJ, 2020 WL 1868891, at *4 (D.D.C. Apr. 10, 2020). After a plea, "far

from promoting liberty, a court is generally required to detain the defendant as the background rule." *Id.*

The statute governing pre-sentencing detention places defendants into two categories. Defendants convicted of specific offenses, including crimes of violence, are subject to mandatory detention unless extremely limited circumstances apply. 18 U.S.C. § 3143(a)(2). Section 3143(a)(2) cross-references the offenses listed in § 3142(f)(1)(A)–(C) of the Bail Reform Act.[1] 18 U.S.C. § 3143(a)(2). Defendants who are convicted of or plead guilty to these enumerated crimes must be detained unless (1) there is either a "substantial likelihood that a motion for acquittal or new trial will be granted" *or* the government has recommended no sentence of imprisonment; *and* (2) the court finds by "clear and convincing evidence" that the person is neither a flight risk nor a danger to the community. *Id.* at § 3143(a)(2)(A)–(B).

All other defendants are subject to a presumption of detention, which can be rebutted only by "clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(a)(1). As other courts in this District have explained, § 3143(a)(1) requires the Court to conduct the same analyses of flight risk and dangerousness used in the pre-trial context, but with the burden shifted. *See Wiggins*, 2020 WL 1868891, at \*4; *United States v. Weekes*, No. 13-CR-187-KBJ, 2013 WL 6571598, at \*1 (D.D.C. Dec. 13, 2013). Now the *defendant* must convince the Court that he is neither a flight risk

---

[1] Mandatory pre-sentencing detention applies to the crimes mentioned in § 3142(f)(1)(A)–(C) of the Bail Reform Act: crimes of violence; certain sex trafficking violations; certain federal crimes of terrorism; offenses with a maximum sentence of life imprisonment or death; and specific controlled substances offenses. 18 U.S.C. § 3142(f)(1)(A)–(C). The Bail Reform Act defines a "crime of violence" as (A) "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another," (B) "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," or (C) "any felony under chapter 77, 109A, 110, or 117." 18 U.S.C. § 3156(a)(4).

nor a danger to the safety of others or the community. *Wiggins*, 2020 WL 1868891, at \*4. When making this determination, the Court evaluates the record considering the same four dangerousness and flight-risk factors laid out in § 3142(g). *Id.* at \*5.

## III. DISCUSSION

### A. Chansley's Pre-Sentencing Detention Must Be Evaluated Under 18 U.S.C. § 3143(a)(1)

As an initial matter, this Court must first determine what variety of analysis applies to Chansley—the "clear and convincing" evidence standard of § 3143(a)(1) or the more stringent standard in § 3143(a)(2). The charge to which Chansley has pleaded guilty is plainly not one of the offenses in § 3143(a)(2). Chansley pleaded guilty to one felony: 18 U.S.C. § 1512(c)(2), obstruction of an official proceeding. ECF No. 69. As both parties have previously agreed, ECF No. 12 at 18; ECF No. 17 at 2 n.2, and this Court has found, this felony is not a "crime of violence" as defined by the Bail Reform Act, *Chansley*, 2021 WL 861079, at \*7. Nor is it one of the other crimes specifically enumerated in § 3142(f)(1)(A)–(C). Indeed, the government did not even pursue pre-trial detention under § 3142(f)(1)(A), (B), or (C), instead arguing that Chansley was subject to detention based on § 3142(f)(1)(E). *Id.* Chansley is thus subject to the "clear and convincing" pre-sentencing detention analysis of § 3143(a)(1).

### B. Chansley Failed to Show by Clear and Convincing Evidence That He Is "Not Likely to Flee," As Required by 18 U.S.C. § 3143(a)(1)

After Chansley's first detention hearing, this Court found by a preponderance of the evidence that no condition or combination of conditions would ensure that he would not flee. *See Chansley*, 2021 WL 861079, at \*14–15. Now, after pleading guilty, Chansley faces an even heavier burden: he must convince the Court by clear and convincing evidence that he is not likely to flee, considering the same § 3142(g) factors. 18 U.S.C. § 3143(a)(1). As discussed below, nothing in

Chansley's motion or the record significantly affects this Court's analysis regarding his potential flight risk.

The Court reiterates the reasons set forth in its March 8, 2021 Memorandum Opinion: Chansley is a mascot of "QAnon," an active conspiracy group.[2] *Chansley*, 2021 WL 861079, at *14. Given his high-profile status as a member (or former member) of this group, the government has alleged he is able to "quickly raise large sums of money for travel through non-traditional sources" and has previously "demonstrated an ability to travel long distances using untraceable methods." *Id.* The Court has repeatedly cited this ability as a deciding factor when evaluating Chansley's potential release.

None of the evidence put forth in Chansley's motion for release mitigates these concerns. Chansley proffers a plan for release. ECF No. 67-1 at 5–7. While the plan details several potential joint custodians, *id.* at 7, it fails to explain how these custodians will ensure that Chansley will appear for sentencing. Chansley mentions that a psychotherapist will meet with him for counseling up to three times a week, and a medical doctor will monitor his physical health at least once a week. *Id.* at 7. But beyond this description of medical attention, Chansley's motion amounts to no more than a list of names and a location. He provides no explanation of how these individuals reduce his flight risk. Will they merely provide guidance and support? How will they prevent Chansley from fleeing if he so desires?

---

[2] Chansley's counsel said in a statement that Chansley "repudiated" QAnon. *See* Alan Feuer, "Capitol Rioter Known as QAnon Shaman Pleads Guilty," *The New York Times* (Sept. 3, 2021), https://www.nytimes.com/2021/09/03/us/politics/qanon-shaman-capitol-guilty.html. Chansley has not personally indicated as such to this Court. Still, regardless of any potential repudiation, there is no doubt that he is a mascot for the QAnon movement. Hundreds of attendees joined Chansley's September 3, 2021 plea-agreement hearing on the public access line, and at least once this Court's proceedings were interrupted with shouts of "Freedom!"

The plan does not mitigate the possibility that Chansley's supporters will enable him to quickly raise money and flee. *Chansley*, 2021 WL 861079, at *14. Nor does it explain in sufficient detail how these custodians, many of whom Chansley has seemingly never met, will prevent him from absconding. While personal and community ties can lessen a defendant's potential flight risk, *see United States v. Xulam*, 84 F.3d 441, 443 (D.C. Cir. 1996), it is Chansley's counsel, not Chansley, with ties to the places and individuals described in the motion.

Further, the family ties that Chansley *does* have hardly mitigate his potential flight risk. His mother has repeatedly stated that he has done nothing wrong. *Chansley*, 2021 WL 861079, at *14. She believes Chansley to be "innocently sitting in a prison cell." *Id*. Without another custodian Chansley is beholden to (or even acquainted with), without an explanation of how these individuals will prevent Chansley from fleeing, and without other evidence to mitigate this Court's concerns about Chansley's flight risk, this arrangement does not persuade the Court by clear and convincing evidence that Chansley will not flee.

Chansley's remaining arguments are without merit. His mention of the potential for "triggering events" to his competency, ECF No. 67-1 at 1–3, does not alter the Court's analysis. Nor does Chansley's passing reference to his issues "arising out of long term survival of significant amounts of radiation . . . in 2003." ECF No. 67-1 at 7. And any potential issue with access to Chansley's counsel for the purposes of reviewing discovery evidence has been alleviated by Chansley's plea. ECF No. 67-1 at 4. Importantly, he does not explain how any of these factors bear on the question at hand: whether Chansley will flee.

The Court is pleased to see the evolution in Chansley's thinking from the virulent statements he made immediately after the January 6 Capitol riot, ECF No. 70 at 6, and his denial of responsibility on 60 Minutes+ in March, *Chansley*, 2021 WL 861079 at *11, to his acceptance

of responsibility at his plea-agreement hearing. Chansley has admitted to his crime and acknowledged its wrongfulness—far beyond what many other January 6 Capitol riot defendants have done. This Court will credit this acceptance of responsibility at time of sentencing. The Court hopes that Chansley's change of heart is sincere.[3]

But the Court is also disappointed that Chansley's acceptance of responsibility was not more fulsome. Section 3143(a)(1) requires courts to apply a presumption of detention. Considering the heavy statutory burden Chansley faces in securing pre-sentencing release, the Court would have appreciated a greater step forward in acknowledging the wrong he committed. Chansley has a constitutional right to peacefully demonstrate. He even has a constitutional right to disbelieve the results of the 2020 presidential election. But he has never had the right to force his way "through the barricades and past Capitol Police officers" into the Senate Chamber to disrupt the certification of our democratic election. *Chansley*, 2021 WL 861079, at *1. Harm befell the nation as a result of Chansley's actions on January 6, 2021. Given Chansley's serious crime—and the Court's general requirement to detain pre-sentencing defendants "as a background rule"—it would take more than a perfunctory acknowledgement of contrition to convince the Court that his change of heart decreased his flight risk. *Wiggins*, 2020 WL 186889, at *4.

Accordingly, the Court finds that Chansley has failed to present clear and convincing evidence that he is not a flight risk, as required by § 3143(a)(1).[4]

---

[3] The Court's hopes have been recently dashed when, a day after sentencing, another January 6 defendant made statements in an interview that directly conflicted with the contrite statements she made to the undersigned.

[4] For release pending sentencing, this Court must find by clear and convincing evidence that the defendant is *both* not a flight risk *and* not a danger to others or the community. 18 U.S.C. § 3143(a)(1). Because this Court does not find by clear and convincing evidence that Chansley is not a flight risk, it need not address the issue of Chansley's dangerousness.

## IV. CONCLUSION

For the reasons set forth above, defendant Jacob Anthony Chansley's motion for release, ECF No. 67, is hereby **DENIED**.

*\*\*\**

This Memorandum Opinion and Order includes information regarding defendant's potential pre-sentencing release plan, which this Court previously allowed defendant to file under seal since it included addresses and names of individuals. *See* ECF No. 67. Yet Chansley's counsel discussed much of the information the Memorandum Opinion and Order references from the sealed filing during his public plea-agreement hearing. Accordingly, the Court hereby **ORDERS** defendant to show cause forthwith why this Memorandum Opinion and Order should not be unsealed, or why any portion shall remain sealed.

It is **SO ORDERED**.

Date: September 9 , 2021

Hon. Royce C. Lamberth
United States District Judge