```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
 2    _____

 3    United States of America,    ) Criminal Action
                                    ) No. 1:21-cr-00003-RCL
 4                   Plaintiff,     )
                                    ) Plea Hearing (via NVTS)
 5    vs.                           )
                                    )
 6    Jacob Anthony Chansley,       ) Washington, D.C.
                                    ) September 3, 2021
 7                   Defendant.     ) Time:  11:00 a.m.
      _____
 8
                 Transcript of Plea Hearing (via NVTS)
 9                         Held Before
            The Honorable Royce C. Lamberth (via NVTS)
10             Senior United States District Judge
      _____
11
                   A P P E A R A N C E S
12
      For the Government:     Kimberly L. Paschall
13    (via NVTS)              UNITED STATES ATTORNEY'S OFFICE
                              FOR THE DISTRICT OF COLUMBIA
14                            555 Fourth Street, Northwest
                              Washington, D.C. 20001
15
      For the Defendant:      Albert S. Watkins
16    (via NVTS)              KODNER WATKINS, LC
                              7733 Forsyth Boulevard, Suite 600
17                            Clayton, Missouri 63105
      _____
18
      Stenographic Official Court Reporter:
19    (via NVTS)              Nancy J. Meyer
                              Registered Diplomate Reporter
20                            Certified Realtime Reporter
                              333 Constitution Avenue, Northwest
21                            Washington, D.C. 20001
                              202-354-3118
22

23

24

25
```

1                    P R O C E E D I N G S

2              (REPORTER'S NOTE:  This hearing was held during the
   COVID-19 pandemic restrictions and is subject to the

3   limitations of technology associated with the use of
   technology, including but not limited to telephone and video

4   signal interference, static, signal interruptions, and other
   restrictions and limitations associated with remote court

5   reporting via telephone, speakerphone, and/or
   videoconferencing.)

6

7              THE COURTROOM DEPUTY:  Your Honor, we're on the

8   record in Criminal Action 21-3, United States of America v.

9   Jacob Anthony Chansley.

10         Counsel, please identify yourselves for the record.

11             MS. PASCHALL:  Good morning, Your Honor.  Kimberly

12   Paschall for the United States.

13             MR. WATKINS:  Your Honor, Albert Watkins on behalf of

14   Defendant Jacob Chansley.

15             THE COURT:  Okay.  Good morning, Counsel.

16   Mr. Chansley, can you hear me okay?

17             THE DEFENDANT:  Yes, Your Honor, I can.

18             THE COURT:  Okay.  The first thing on the agenda is

19   determination of defendant's competency.  I have a report that

20   I received from the psychology -- psychologist who performed it

21   at the Federal Bureau of Prisons FCI Englewood that was filed

22   under seal July 13th, 2021, and I have provided to both

23   counsel.

24         I have to determine based on that report whether the

25   defendant is competent to proceed to trial or in this case, if

1    I find he's competent, to enter a plea in this case.

2         I first have to -- I've read the report carefully -- say

3    how pleased I am with the thoroughness of the report, with the

4    cooperation the defendant provided to the psychologist.  I

5    thought the psychologist was very candid in her report and in

6    the discussions she had with the defendant and in the -- the

7    defendant's discussion.  I've actually never seen a report

8    where the psychologist even went into the defendant's view of

9    the judge, which I don't think I've ever read anything like it.

10   It will be an unusual case in this circumstance when we get to

11   the point of sentencing where the defendant shared some sort of

12   candid thoughts about the whole process, including his limited

13   knowledge of how the judge had come across to him in earlier

14   proceedings here, which I've never actually seen from any

15   defendant.  I've had defendants tell me what they thought of

16   me, but I've actually never heard how they thought of me to a

17   psychiatrist or psychologist before, which is pretty

18   interesting.

19        In any event, the psychologist concluded that he's

20   clearly competent to stand trial, and she reported that he

21   himself expressed to her the view that he was competent and had

22   no problem.  And in his discussions with her, he seemed to

23   demonstrate to her a clear understanding of what's going on,

24   what the proceedings are, his role in the proceedings, and

25   certainly an understanding to her that he is competent to work

1    with his attorney and go forward in this proceeding in a

2    competent fashion.

3           I think the first thing that the Court has to do before

4    I make that finding is give his attorney an opportunity to say

5    anything he wants to say about that as well.

6           MR. WATKINS:  Your Honor, on behalf of the

7    defendant --

8           THE COURTROOM DEPUTY:  Mr. Watkins, we're having some

9    technical difficulties.  Give me one second.

10          MR. WATKINS:  Thank you, Your Honor.

11          I, too, wish to share with the Court and make a clean

12   record about the overwhelmingly detailed and professional

13   undertaking that was pursued by the doctor in Englewood.  To

14   put a psych eval which comprehensibly not only supported the

15   determination that there was competence on the part of the

16   defendant, but did so in a fashion which included and made

17   reference to the 2006 medical records from the military.

18          I am representing to the Court that the defendant has

19   had an opportunity to review in detail the psych eval.  I have

20   done so with him.  He has been provided a copy of it.  We have

21   discussed it in detail, and the defendant -- I will say that it

22   served to be of significant value to the defendant and his

23   counsel to assist us in navigating from where we were to where

24   we are today.  And there is no objection to the Court receiving

25   the psych eval and relying upon it as a resource for

1   determination of competency in this matter.

2           THE COURT:  Okay.  Mr. Chansley, I'll give you the

3   opportunity to speak about that, if you want.  You're not

4   required to, but I do have to determine that you're competent

5   to go forward in this case with the assistance of your counsel.

6   Is there anything else you want to say about that before we go

7   to -- what we're going to get into today?

8           THE DEFENDANT:  Well, thank you, Your Honor.

9       I appreciate the opportunity to speak.  All I would like

10  to say is I'm very appreciative for the Court's willingness to

11  have me and my mental vulnerabilities examined, as well as I

12  hope that the -- Your Honor certainly didn't take any offense

13  by anything that I told the psychiatrist.  I definitely didn't

14  mean anything personal whatsoever.  I -- I -- you know, I just

15  said I hoped you were impartial.

16          THE COURT:  I didn't.  I thought it was fairly

17  pleasant, actually, so I was --

18          THE DEFENDANT:  Okay.  Good.  Okay.  Well, thank you,

19  Your Honor.  I'm glad to hear.  And God bless you and thank you

20  for what you do for our country.

21          THE COURT:  Well, based on the report itself, the

22  discussion with the attorney, discussion with the defendant, I

23  find that the defendant is competent to stand trial and that

24  the -- the Court can go forward today.  I'm going to go forward

25  with the normal plea colloquy that I do with a competent

1    defendant.  And your attorney has advised me that you wish to

2    enter a plea of guilty.

3         The plea agreement I received says on page 1, it's a

4    plea of guilty to Count 1, but, in fact, the charge is in

5    Count 2.  So there's a typo in the plea agreement itself that I

6    will correct in pen and ink on page 1 of the plea agreement as

7    to Count 2.

8         I take it all parties agree to that?

9         MR. WATKINS:  Yes, Your Honor.  And for the record, I

10   want to make it clear that I did share with the defendant that

11   the charge to which he is pleading guilty is the obstruction

12   charge, being Count 2 in the indictment filed herein.

13        THE COURT:  And I'll go over the charge specifically

14   with him as I go through this.

15        Before I do that, let me say to the defendant, I have to

16   have the clerk give you the oath, and then I'll ask you a

17   series of questions to ensure that you fully understand your

18   rights, that you're doing this voluntarily, because the plea of

19   guilty has to be voluntary.

20        So, first, I'll ask the clerk to place you under oath.

21        THE COURTROOM DEPUTY:  Mr. Chansley, please raise

22   your right hand.

23        (Oath administered.)

24        THE DEFENDANT:  I do.

25        THE COURTROOM DEPUTY:  Please state your full name

1     for the record.

2                  THE DEFENDANT:  Jacob Anthony Angeli Chansley.

3                  THE COURTROOM DEPUTY:  Thank you.

4                  THE COURT:  Okay.  Mr. Chansley, first, do you

5     understand that your answers to my questions are subject to the

6     penalty of perjury and making a false statement if you don't

7     answer my questions truthfully?

8                  THE DEFENDANT:  Yes, Your Honor.

9                  THE COURT:  I find that you are competent.  Have you

10    had adequate time and opportunity now to discuss this case with

11    Mr. Watkins, your attorney?

12                 THE DEFENDANT:  Yes, Your Honor.

13                 THE COURT:  Are you satisfied with Mr. Watkins's

14    representation of you in this matter?

15                 THE DEFENDANT:  Yes, Your Honor.

16                 THE COURT:  Do you understand that under the

17    Constitution and laws of the United States you're entitled to a

18    trial by jury on these charges?

19                 THE DEFENDANT:  Yes, Your Honor.

20                 THE COURT:  You understand if there were a trial,

21    you'd be presumed to be innocent and the government would be

22    required to prove you guilty by competent evidence beyond a

23    reasonable doubt before you could be found guilty?

24                 THE DEFENDANT:  Yes, Your Honor.

25                 THE COURT:  You understand if there were a trial,

1    witnesses for the government would have to come to court and

2    testify in your presence and your attorney could cross-examine

3    those witnesses and object to evidence offered by the

4    prosecutor and could offer evidence on your behalf?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  You understand you'd have the right to

7    testify at your trial, but you'd also have the right not to

8    testify and no inference or suggestion of guilt could be drawn

9    from the fact that you did not testify?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  You understand if I accept your plea,

12   you'll waive these rights, there will be no trial, and I will

13   enter a judgment of guilty on your plea alone today?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  If you plead guilty, do you understand

16   that you will also waive the right not to incriminate yourself

17   since you must acknowledge that you are guilty for me to accept

18   your plea?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Having discussed your rights with you, do

21   you still wish to plead guilty?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  Okay.  Now I'm going to go over the

24   specific wording of the charge you're pleading guilty to.

25   Count 2 reads this way:  On or about January 6th, 2021,

1    within the District of Columbia, Jacob Anthony Chansley, also

2    known as Jacob Angeli, attempted and did corruptly obstruct,

3    influence, and impede an official proceeding -- and it was a

4    proceeding before Congress -- by committing an act of civil

5    disorder, and threatening congressional officials, and

6    unlawfully remaining in a restricted building without lawful

7    authority, and engaging in disorderly and disruptive conduct.

8    So that's the actual charge you'll be pleading guilty to.  Do

9    you understand that?

10                   THE DEFENDANT:  Yes, Your Honor.

11                   THE COURT:  Now, counsel tell me in the plea letter

12   that the maximum penalty on that charge is 20 years in prison;

13   a fine of $250,000, or twice the pecuniary gain or loss; a term

14   of supervised release of not more than 3 years; penalties --

15   applicable interest or penalties on the fine and restitution,

16   the restitution having already been assessed at $2,000.  In

17   addition, a special assessment of a hundred dollars per count

18   for felonies is required to be imposed by law.

19            So you understand that's what the maximum penalty will

20   be by law?

21                   THE DEFENDANT:  Yes, sir.  Yes, Your Honor.

22                   THE COURT:  And, then, you and Mr. Watkins have

23   talked about the sentencing commission guidelines and how they

24   might apply in your case; is that correct?

25                   THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  You understand the -- I won't actually

2     determine the sentencing guidelines until after a presentence

3     report has been completed, and you and the government have

4     the right to challenge the facts in the presentence report?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  You understand after I determine what

7     guideline applies in the case, I have authority in some

8     circumstances to impose a sentence that's more severe or less

9     severe than the sentence called for by the guidelines?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  You understand under some circumstances

12    you or the government may have the right to appeal whatever

13    sentence I decide upon?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  Has anyone threatened you or anyone else

16    forced you in any way to enter this plea of guilty?

17         THE DEFENDANT:  No, Your Honor.

18         THE COURT:  Now, the -- I have what has been handed

19    to me as a plea agreement with what purports to be your

20    signature on it, September 1st.  Let me have Mr. Watkins give

21    us a brief description of it, because I don't want to ask you

22    if you understand it all or if you have any questions about it.

23         So, Mr. Watkins, go ahead.

24         MR. WATKINS:  All right.  Your Honor, I have had the

25    opportunity to review in detail with Mr. Chansley not just the

1    indictment but all of the discovery, and that includes, of

2    course, the expansive amount of video produced by the

3    government in connection with this case.  I've also reviewed

4    with the defendant, through the magic of remote Webex or Zoom,

5    all of the videos that we were in possession of that were not

6    produced by the government but were sent to us from members of

7    the public.

8         I reviewed with the defendant the waiver of trial by

9    jury form, which is before the Court today.  Mr. Chansley's

10   signature appears on the signature line above the defendant

11   designation.  I've reviewed with Mr. Chansley the defendant's

12   acknowledgment, which is also before the Court right now,

13   reflecting and indicating his execution or signing of that

14   acknowledgment on September 1, 2021, being the same day I, too,

15   as counsel for the defendant signed that form.

16        Also before the Court is a defendant's acceptance form

17   executed or signed by the defendant on the 1st of September,

18   2021.  I, too, signed that form after reviewing it with my

19   client on September 1, 2021.  I am representing to the Court

20   that I am familiar with the signature of the defendant, and the

21   signatures that appear on the three forms are indeed those of

22   the defendant.

23        THE COURT:  Give us a little description of what the

24   agreement does.

25        MR. WATKINS:  I'm sorry.  I didn't hear -- is someone

1    talking to me?

2              (Indiscernible simultaneous cross-talk.)

3              THE COURT:  -- the counts.

4              MR. WATKINS:  Can you hear?

5              MS. PASCHALL:  A description of what -- the

6    agreement.

7              MR. WATKINS:  I'm sorry, Your Honor.  I'm told you're

8    asking about the plea agreement itself.

9              THE COURT:  Yes.

10             MR. WATKINS:  I reviewed the plea agreement with the

11   defendant in detail, line by line.  I answered all of his

12   questions to his satisfaction.  He expressed a great deal of

13   astuteness during our review and expressed appreciation for the

14   meaning, impact, and substance of the plea agreement.

15             The plea agreement calls for entry of the defendant to a

16   plea of guilty to the charge of Count 2, obstruction, and

17   solely that count.

18             The defendant is aware of the federal sentencing

19   guidelines calculation protocol that was followed.  We reviewed

20   that.  We discussed that, and he concurred with the terms that

21   relate to that.  While we understand the government is -- is

22   not -- there's a term in here that relates to -- on argument

23   with the government about presentencing release, with the

24   understanding that we can still argue our motion that remains

25   outstanding today and before the Court relative to what was

1    then labeled a pretrial release motion, but which we are

2    requesting the Court to characterize as a presentence release

3    motion.

4              THE COURT:  Okay.  Mr. Chansley, you understand the

5    plea agreement?  Have any questions at all you want the Court

6    to resolve about?

7              THE DEFENDANT:  Yes, I understand the plea agreement,

8    Your Honor.  And, no, Your Honor, I have nothing further to

9    request of the Court.

10             THE COURT:  Okay.  You agree to it?

11             THE DEFENDANT:  Yes, Your Honor, I agree to it.

12             THE COURT:  Has anyone made any prediction or

13   promises to what sentence I'll give you in this case?

14             THE DEFENDANT:  They have not.

15             THE COURT:  You understand they can't because I don't

16   know myself right now?  I'll get a presentence report.  I'll

17   hear from you and your attorney, from the government at time of

18   sentencing.  I don't know myself what it's going to be.  Do you

19   understand that?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  Okay.  Now, the government and you have

22   also signed something called a statement of the offense in

23   support of the guilty plea -- and your signature is on the last

24   page of that one along with your attorney -- on September 1st.

25   Did you go over that line by line with Mr. Watkins?

1          MR. WATKINS:  Your Honor -- actually, Your Honor, I

2     apologize for not bringing that up when I pointed out the other

3     forms.

4          The statement of facts were reviewed line by line with

5     my client, and he executed that or signed that form on

6     September 1, the same day that I did.  His signature, the

7     signature that appears there, is indeed the signature of

8     Mr. Chansley.

9          THE COURT:  All right.  Did you read that carefully,

10    Mr. Chansley?

11         THE DEFENDANT:  Yes, Your Honor, I believe so.

12    That's basically saying what I did; is that correct,

13    Your Honor?

14         THE COURT:  Yes.

15         THE DEFENDANT:  Yes, Your Honor, I read that

16    carefully, and my attorney read it to me as well.

17         THE COURT:  Okay.  And that's what really happened?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  So you are, in fact, guilty of this

20    offense?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  Okay.  All right.  Mr. Chansley, since

23    you've acknowledged that you are guilty as charged, that you

24    know your right to trial, since you know what the maximum

25    possible punishment is, since I've discussed the sentencing

1   guidelines with you, since I hereby find you're voluntarily

2   pleading guilty, I accept your guilty plea.  I enter judgment

3   of guilty on your plea to Count 2 of the indictment.

4        We'll set a date for sentencing at the end of this

5   hearing.

6        I will hear but take under advisement the motion for

7   release pending sentencing.  I have -- I had a discussion off

8   the record with counsel prior to the plea agreement about the

9   motion that was filed and said that I would consider it -- if

10  there was a guilty plea, that I would consider the plea motion.

11  And, of course, the standard is different once it's

12  post-sentencing.

13       So I don't know whether counsel want to file any other

14  legal arguments or not.  There's still a -- the burden is

15  somewhat different, but I understand the burden and

16  the guilty plea here is not to a crime of violence.  If there

17  were an assault on an officer and there were a crime of

18  violence, there -- my hands would be probably totally tied.  So

19  my hands are not totally tied here.  So there's -- anyway, I am

20  willing to listen, Mr. Watkins, to the motion about what we

21  should do.

22            MR. WATKINS:  Thank you, Your Honor.  We will.

23            MS. PASCHALL:  Your Honor -- I'm so sorry,

24  Your Honor.  If I may, just before we get into this.

25       Given the terms of the agreement, I think any further

1   filing regarding release would, in fact, be a breach, since the

2   motion that we're discussing was filed previous --

3            (Indiscernible simultaneous cross-talk.)

4            THE COURT:  -- filed.  Okay.

5            MS. PASCHALL:  That's what I assumed we were going to

6   be doing, what was previously filed before we entered the

7   agreement.

8            THE COURT:  Okay.  All right.  All right.  I'll take

9   what's filed and apply the legal standard.

10           MR. WATKINS:  Thank you, Your Honor.

11           And for the record, on behalf of the defendant, I want

12   to make it clear -- I'm sorry.

13           THE COURT:  Well, that motion is -- oh, that

14   motion -- oh, that motion is under seal because it has some

15   details in it.

16           Can you argue an unsealed part of that, or is the whole

17   part sealed?

18           MR. WATKINS:  Your Honor, the only portion that needs

19   to be sealed is that which, as I recall, was set forth in an

20   exhibit to the motion.

21           THE COURT:  Okay.

22           MR. WATKINS:  And I can argue without disclosing any

23   of the contents that were sealed.

24           THE COURT:  Okay.

25           MR. WATKINS:  I think it's important for the record

1    that I make it clear to the Court that we are not seeking to

2    brief anything having to do with the different burden that

3    applies to a motion for release after the entry of a plea,

4    understanding and appreciating that the Court is fully aware of

5    and knowledgeable of that burden that applies to that type of

6    motion, especially within the context of the case that does not

7    involve violence.

8            THE COURT:  Right.

9            MR. WATKINS:  That -- that being said, Your Honor --

10   and I will not try to belabor that which we did candidly

11   discuss off the record, but I do want to make a record.

12       The defendant has been an individual who voluntarily

13   surrendered himself.  He did so peacefully on January 9, 2021.

14   He has at all times been an individual who while confined was

15   not violent, was not causing a problem, was not disruptive on

16   any level.

17       He has been, for all intents and purposes, for each and

18   every day that he has been confined, with the exception of his

19   visit to Englewood, Colorado, in solitary confinement 22, 23

20   hours per day.  The -- what none of us perhaps fully

21   appreciated prior to the psych evaluation was the -- was the

22   extraordinary adverse effect that solitary confinement had on

23   Mr. Chansley given his mental health vulnerabilities that are

24   duly noted in the psych eval and in the 2006 military records

25   accorded and provided to the psychologist in Englewood,

1    Colorado, and the Court.

2         We have an opportunity to permit Mr. Chansley to move

3    forward further with his getting well.  The opportunity that we

4    have presented to the Court is one which takes into

5    consideration not only the safety of all but the safety in

6    particular of Mr. Chansley, where the geographic location is

7    one which is designed to not only serve the public's interests

8    but the interests of Mr. Chansley.  And I have confirmed with

9    this Court the -- the family involved that -- has

10   accommodations that are idyllic for this situation and, of

11   course, their long-standing familiarity with people with mental

12   health vulnerabilities by virtue of their own adult child of

13   special needs.

14        We have reconfirmed the mental health care professional

15   and his willingness to routinely and regularly monitor the

16   health and well-being of Mr. Chansley during the presentence

17   period.  We have also reconfirmed the willingness and

18   availability of the psychotherapist to permit a learned and not

19   aggressive but not dilatory undertaking to -- to deal with the

20   psych issues that were raised in the eval provided to the

21   Court.

22        We have confirmed the readiness and the willingness of

23   the individuals that were mentioned for the purposes of

24   transporting Mr. Chansley.  We have -- and this is as of

25   yesterday -- an understanding that the -- the health of the

1    maternal grandfather of Mr. Chansley remains very slowly

2    deteriorating from a state that doesn't leave much room for

3    further (inaudible).

4         We do know that Mr. Chansley has zero criminal history.

5    We do know that he was not a planner.  He's not violent, and he

6    was cooperative at all times while confined, including with the

7    psychiatrist -- psychologist who was conducting a remarkably

8    detailed eval report for the Court and the parties.

9         And I would request the Court, given the totality of the

10   circumstances, given the opportunity that is available for the

11   security and well-being of -- and care for Mr. Chansley and his

12   proximity to his counsel for the purposes of undertaking the

13   review of the presentence investigation report and whatever

14   machinations are required, depending on the contents thereof;

15   and I believe, Your Honor, the interests of justice, the

16   interests of the health and well-being of Mr. Chansley, and

17   recognition of -- of his -- not only his acceptance of

18   responsibility but his desire to be held accountable is

19   something that should be considered by this Court within the

20   context of this motion.

21        We have worked very diligently with Mr. Chansley to

22   navigate the preplea undertakings.  We have done so with COVID

23   protocols in place with the court.  We have done so utilizing

24   technology, but we have done so with patience.  We've done so

25   with an overwhelming amount of sensitivity to the importance of

1    Mr. Chansley being in a position, a knowing position, of --

2    with possessable wealth of information about what he's doing,

3    the decisions that he has made, that -- the choices within the

4    context of this plea, which included the waiver of a jury

5    trial, that included all of the rights to confront an accuse --

6    an accuser.

7         And he's done so with remarkable appreciation for

8    and understanding of the circumstances we're dealing with

9    here.  The time at Englewood did permit him to recapture his

10   acuity, and I am hopeful that the Court will permit the growth

11   and healing of Mr. Chansley to continue, but to continue with a

12   greater degree of meaningful medical professional care

13   surrounded by those who are sensitive to his vulnerability

14   and willing to work with him and for him.  The people who are

15   willing to work for and with Mr. Chansley are not -- are not

16   wilted flowers.  We are talking about individuals who are --

17   in one case a former FBI special agent, another case a

18   full bird colonel with the U.S. military who's also a mental

19   doctor.

20        In another case we're dealing with a psychotherapist

21   with decades of experience in personality disorders, and we're

22   dealing also, to the extent that this Court will choose to

23   recognize that you're dealing with a counsel that is deeply

24   committed to his client and is willing to put together a format

25   that is by design in close geographic proximity to me, to make

1    sure that the steps we navigate from here through conclusion to

2    this case are done with the same degree of appreciation for

3    the importance of putting Mr. Chansley in a position of

4    knowledge.

5         For that reason, Your Honor, I would request that this

6    Court grant the motion that was originally labeled as a motion

7    for pretrial release and understood to be recognized by this

8    Court as a motion for presentence release and grant that

9    motion, subject to obviously all of the terms and conditions

10   deemed appropriate by this Court.

11        THE COURT:  Thank you, Mr. Watkins.

12        Government.

13        MS. PASCHALL:  Thank you, Your Honor.

14        I just want to make clear that it was the government's

15   intention that the motion for pretrial release be handled

16   before the plea.  Obviously the plea does envision no argument

17   on release after the plea has been entered.  I don't know how

18   things fell out with the timing of this, so -- and the

19   government has some concern about whether we would be in breach

20   of the agreement, but given the way that this has developed, I

21   will just reiterate the argument.

22        THE COURT:  I did not read the agreement that way.

23   So I'm sorry if that's what you thought it was.  I did not.

24        MS. PASCHALL:  I understand, Your Honor.  And I

25   understand how we -- we ended up in the posture that we are in

1    and I -- I took Mr. Watkins's representation that he was not

2    planning to file anything post entry of the plea to be in

3    agreement with that as to what the plea says.  So here we are.

4         I mean, the government reiterates what we've been saying

5    the entire time that this has been pending and what we've said

6    in our motion.  In fact, now I think we are even more likely to

7    be in a position --

8              (Indiscernible simultaneous cross-talk.)

9              THE COURT:  -- argument now, I agree.

10             MS. PASCHALL:  Right.  So now we are in a position

11   where this defendant has pled guilty.  A large portion of the

12   previous motions for release had to do with counsel being able

13   to have access to his client in order to discuss the case.

14   He's now been able to do so and has stated that he's done so

15   quite thoroughly.  So that necessity has dissipated.

16        The defendant faces quite a lengthy prison sentence

17   still.  The guidelines range that we have estimated, which, of

18   course, is just an estimate until we hear from the

19   U.S. Probation Office, but that estimate is 41 to 51 months.

20   At this point, Mr. Chansley has been incarcerated for a little

21   less than 8 months.  He still has a significant portion of what

22   would be a guideline sentence left to serve.

23        And the government relies on all of its prior briefings

24   about the concerns that we have for safety of the community,

25   for return to court.  Particularly now that sentencing will be

1    imminent, I think those concerns are additionally heightened.

2    And so I won't belabor the points that are in our brief, which

3    we filed under seal in response to what was filed under seal by

4    the defense, but I don't think we plan to elicit anything at

5    this point that would need to be discussed on the record and

6    would rely on those pleadings.

7            MR. WATKINS:  Your Honor, if I may very briefly?

8            THE COURT:  Yes.

9            MR. WATKINS:  This is not a surprise to the

10   government.  We did have our -- our private in chambers -- in

11   virtual chambers conference with the Court.  So there is not a

12   surprise here.  We understand what's going on and why it's

13   going on.

14           While the guilty plea has been accepted, one of the

15   things that the Court, I'm certain, heard was the response to

16   the Court's own inquiry of the government as to whether or not

17   the defendant was a planner or an organizer.  The Court

18   understood -- the government understood the question and

19   acknowledged with candor to the Court that, in fact, the

20   defendant was not a planner.  He was not an organizer.

21           The amount of work that needs to be done with

22   Mr. Chansley is not designed for the purposes of stating solely

23   his proximity to counsel for ease of my undertakings which

24   require, no matter what, ongoing contact with and navigation of

25   the presentence report and that which is necessary to be done

1    between now and sentencing.  But it's also for the humane or

2    the humanity-based purpose that's associated with a man that

3    the government knows since the psych eval report and that the

4    government for which the military has known since 2006 is a man

5    with mental health vulnerabilities, who has for eight months

6    been on -- you know, basically in what any doctor will tell you

7    is the worst thing that you can possibly have done to you if

8    you are possessed of this personality disorder, and that is to

9    be placed in solitary confinement.

10          I want to keep Mr. Chansley well.  I want to get him

11   healed and on a road to being further healed, and I want to

12   make sure that while Mr. Chansley is on my watch I'm doing so

13   in the fashion that will lend a heightened degree of integrity

14   to these proceedings and the disposition of this case.

15          It does obviously afford the opportunity to present to

16   the Court at sentencing with a heightened degree of candor and

17   accuracy, the progress that has been made, which we hope will

18   have been made, between now and sentencing.  The proximity of

19   the defendant to anything that resembles the private lifestyle

20   as contemplated under our motion is simply not there.

21          So I appreciate, Your Honor, that your time and -- your

22   consideration of -- of this very important element of what I

23   believe will be demonstrative of how truly our nation is

24   responding to January 6th.  The events of January 6th will --

25   will always remain, but the real -- the real truth of

1    January 6th will be how our nation, our Department of Justice,

2    our justice system, employed patience and compassion for those

3    with mental health vulnerabilities.

4            THE COURT:  Okay.  On that note, the Court will take

5    under advisement the release pending sentencing and will set a

6    date in the order of that question.

7         All right.  Anything else that either side wants to

8    raise today?

9            MR. WATKINS:  On behalf of the defendant, no,

10   Your Honor.

11           MS. PASCHALL:  No, Your Honor.  Thank you.

12        Are we going to set a sentencing date today as well?

13           THE COURT:  I'll set it in the order when I issue

14   that.  I couldn't -- to determine availability, I guess, let me

15   ask the clerk what availability we have.

16           THE COURTROOM DEPUTY:  One second, Your Honor.

17        Your Honor, we're looking at dates around November 12th,

18   2021.

19           MR. WATKINS:  What was the date?

20           MS. PASCHALL:  November 12th.

21        I am going to be unavailable on the 12th, but I have

22   more availability the following week, if the Court is

23   available.

24           MR. WATKINS:  Your Honor, I -- I am available on

25   either of those dates on behalf of defendant, and I would

1      ask -- are we aware of any plans with respect to in-person

2      hearings for the purpose of sentencing?

3                THE COURT:  Well, I'm hoping by then we can.  I

4      have -- I'm trying to start a trial October 18th in person,

5      so --

6                MS. PASCHALL:  And I am -- I am scheduled to be at an

7      in-person motions hearing on November 16th.  So other than the

8      16th, I should have wide availability that week.

9                THE COURT:  November 17th, would that work, at

10     10:00 a.m.?

11               MS. PASCHALL:  10:00 a.m. on the 17th is fine.

12               MR. WATKINS:  It works for the defendant, Your Honor.

13               THE COURT:  Okay.  Let's pencil that in,

14     November 17th at 10:00 a.m. for sentencing in person.

15               MS. PASCHALL:  Yes, Your Honor.

16               THE COURT:  One way or another, I hope.

17               MS. PASCHALL:  Yes, Your Honor.

18               THE COURT:  Okay.  Anything else y'all want to raise

19     today?

20               MS. PASCHALL:  Not for the government, Your Honor.

21     Thank you.

22               MR. WATKINS:  On behalf of the defendant, no,

23     Your Honor.

24               THE COURT:  Okay.  Thank you very much, Counsel.

25          Good luck in the meantime, Mr. Chansley, and I'll rule

1    as promptly as I can on the other question raised.

2              MR. WATKINS:  Thank you, Your Honor.

3              MS. PASCHALL:  Thank you, Your Honor.

4              (The proceedings concluded at 11:54 a.m.)

1            <u>CERTIFICATE OF OFFICIAL COURT REPORTER</u>

2

3            I, Nancy J. Meyer, Registered Diplomate Reporter,

4    Certified Realtime Reporter, do hereby certify that the above

5    and foregoing constitutes a true and accurate transcript of my

6    stenograph notes and is a full, true, and complete transcript

7    of the proceedings to the best of my ability.

8

9                    Dated this 21st day of December, 2021.

10

11                    /s/ Nancy J. Meyer
                     Nancy J. Meyer
12                   Official Court Reporter
                     Registered Diplomate Reporter
13                   Certified Realtime Reporter
                     333 Constitution Avenue Northwest
14                   Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25