**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 21-cr-0003 (RCL)** |
| | ) | |
| **JACOB CHANSLEY** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

**<u>DEFENDANT JACOB CHASNLEY'S MOTION TO
VACATE, SET ASIDE OR CORRECT SENTENCE
PURSUANT TO 28 U.S.C. SECTION 2255</u>**

William L. Shipley, Jr., Esq.
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

*Attorney for Defendant*

Comes now Defendant Jacob Chansley by and through is counsel of record William L. Shipley, and respectfully moves this Court to vacate, set aside or correct his sentence pursuant to Title 28, United States Code, Section 2255.

## I.    INTRODUCTION

On March 6, 2023, Fox News Host Tucker Carlson broadcast on his national cable news program video taken of him on January 6, 2021, captured by closed-circuit television (CCTV) cameras inside the Capitol, and showing him through various corridors and hallways inside the Capitol.

The CCTV videos show he encountered numerous Officers of the U.S. Capitol Police over an extended period of time and was even escorted by one or more of those Officers as he made his way around the Capitol.

The CCTV videos showed one instance where an Officer attempted to open a door for Mr. Chansley only to find that it was locked.  Another CCTV video showed an Officer opening the door to the floor of the Senate Chamber for Mr. Chansley, and the following him inside onto the floor of the Senate.

At no point in any of the videos shown by Fox News did USCP Officers Mr. Chansley encountered inside the Capitol take Mr. Chansley into custody or otherwise impede his movement inside the Capitol.  One CCTV video showed him passing in between approximately 6 Officers who were standing on both sides of a walkway about 10 feet wide.  None attempted to block his movement.

By the Government's own timeline as set forth in its Sentencing Statement, Mr. Chansley entered the Capitol at 2:14 p.m., yet he did not enter the Senate Chamber until 2:52 p.m. – meaning he was walking inside the

Capitol – at times escorted by USCP Officers and at times alone as portrayed in the CCTV videos -- for 38 minutes before the door was opened for him to enter.

Carlson stated that the videos were part of tens-of-thousands of hours of video provided to Fox News by newly installed Speaker of the House Kevin McCarthy.  https://youtu.be/Opy7MLGAPBk?t=169

On March 9, 2023, Dominic Pezzola, currently standing trial in the matter of United States v. Nordean, 21-cr-175 (TJK), filed a motion to dismiss the indictment in his case based on outrageous government misconduct, citing the Government's failure to produce "exculpatory" video and referencing the newly released CCTV videos played by Fox News.[1]

On March 12, 2023, the Government filed an opposition to Pezzola's motion.  Nordean, 21-cr-175 (TJK), ECF Doc. No. 689.  In that Opposition the Government made a specific claim regarding the production in discovery of the CCTV videos that were broadcast by Fox News:

> The footage in question comes from the Capitol's video surveillance system, commonly referred to as "CCTV" (for "closed-circuit television"). The Court will be familiar with the numerous CCTV clips that have been introduced as exhibits during this trial. *The CCTV footage is core evidence in nearly every January 6 case*, and it was produced *en masse*, labeled by camera number and by time, to all defense counsel in all cases.[FN3] With the exception of one CCTV camera (where said footage totaled approximately 10 seconds and implicated an evacuation route), *all of the footage played on television was disclosed to defendant Pezzola (and defendant Chansley) by September 24, 2021*.

Id. at p. 3. (Emphasis added).

---

[1] Pezzola and Mr. Chansley are shown together in video evidence because they were in physical proximity to one and other at a certain points in time on January 6.  But there has never been any evidence that they knew each other, were part of the same group, or otherwise acting in concert on January 6.

On March 17, 2023, counsel for Mr. Chansley sent correspondence to the Government regarding the <u>Nordean</u> case filing, requesting specific details and documents reflecting the representation made.

Government Counsel responded on March 27, 2023.  The response shows that the Defendant is likely entitled to the relief sought by this motion, but that discovery is necessary to obtain material information beyond that which the Government provided.  The response establishes that the discovery/<u>Brady</u> material was not provided in a manner that meets the standard in this Circuit for disclosure of exculpatory material.  Further, the March 27th response includes representations that conflict with claims made by to this Court in various filings between May and October 2021.

Discovery is necessary to determine whether -- and why -- the Government misled this Court and counsel during the period just prior to Mr. Chansley's guilty plea -- and then over approximately three months leading to his sentencing -- regarding the production of discovery that included material that would have been favorable to Mr. Chansley at sentencing.

## II.   THE GOVERNMENT'S PRODUCTION OF DISCOVERY AND BRADY MATERIAL.

### A.   <u>Procedural History Relevant to this Motion</u>

On January 11, 2021, the grand jury issued an indictment charging Mr. Chansley in connection with the events of January 6, 2021.  *See* ECF No. 3. That same day a detention hearing on hearing was held before Magistrate Judge Deborah Fine who ordered him detained.  *See* ECF No. 11 p. 17.

On September 3, 2021, Mr. Chansley entered a guilty plea pursuant to a plea agreement with the Government.  *See* 09/03/2021 Minute Entry. Paragraph IX(E) of the Plea Agreement allows for a collateral attack on his guilty plea based on "newly discovered evidence" and/or "ineffective assistance of counsel."  ECF Doc. No. 69, p. 7.

On November 17, 2021, this Court sentenced Mr. Chansley to a term of imprisonment of 41 months, based on a Guideline Range of 41-51 months as agreed to in the plea agreement entered into with the Government based on the advice of his then attorney.  *See* 11/17/2021 Minute Entry.

Undersigned counsel filed a motion to be admitted *pro hac vice*—which this court granted and became counsel for Mr. Chansely.  *See* ECF Nos. 101, 102, and 11/27/21 Minute Order.  Mr. Chansley's prior attorney, Albert Watkins, was ordered to withdraw.

### B.    Legal Standard for Relief Under Section 2255

A defendant may move to vacate, set aside, or correct his sentence if (1) the sentence was imposed "in violation of the Constitution or laws of the United States"; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence "was in excess of the maximum authorized by law"; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The defendant bears the burden to prove his right to relief by a preponderance of the evidence. United States v. Baugham, 941 F. Supp. 2d 109, 112 (D.D.C. 2012).  As this Court has stated:

> "[T]he petitioner seeking to vacate his sentence shoulders the burden of sustaining his contentions by a preponderance of the evidence." Winchester v. United States, 477 F. Supp. 2d 81, 83 (D.D.C.

2007) (citing <u>United States v. Simpson</u>, 475 F.2d 934, 935 (D.C. Cir. 1973)). Specifically, he "must show 'a fundamental defect, which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" <u>United States v. Weaver</u>, 112 F. Supp. 2d 1, 6  (D.D.C. 2000) (quoting <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962)).

<u>Bedewi v. United States</u>, 583 F. Supp. 2d 72,79 (D.D.C. 2008).

   1. Claims Raising Violations of the Duty to Disclose Under <u>Brady v. Maryland</u>.

The Due Process Clause of the Constitution requires disclosure by the Government to a defendant of any evidence that "is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." <u>Brady v. Maryland</u>, 373 U.S. 83, 87, 83 S. Ct. 1194 (1963). "[F]avorable evidence is material, and constitutional error results from its suppression by the government." <u>Kyles v. Whitley</u>, 514 U.S. 419, 433, 115 S. Ct. 1555 (1995) (internal citations omitted). This constitutional disclosure requirement extends to "exculpatory evidence never requested or requested in a general way." <u>Id</u>. at 433 (internal quotation marks omitted).

To prevail on a <u>Brady</u> claim, the movant must satisfy three requirements: "(1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the [government], either willfully or inadvertently; and (3) prejudice must have ensued." <u>United States v. Flynn</u>, 411 F. Supp. 3d 15, 26 (D.D.C. 2019). "To satisfy the prejudice component, the defendant must show that 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" <u>United</u>

States v. Sitzmann, 893 F.3d 811, 826 (D.C. Cir. 2018) (quoting United States

v. Bagley, 473 U.S. 667, 682 (1985)).

> 2.     Claims Raising Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner

"must prove both incompetence and prejudice." Kimmelman v. Morrison, 477

U.S. 365, 381 (1986). The petitioner must demonstrate that (1) "counsel's

representation fell below an objective standard of reasonableness ... under

prevailing professional norms" and (2) "there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have

been different." Strickland v. Washington, 466 U.S. 668, 687–88, 694 (1984).

A "reasonable probability" under Strickland's second prong is one that is

"sufficient to undermine confidence in the outcome." Id. at 694. To establish

prejudice, the petitioner must show there is "a substantial, not just

conceivable, likelihood of a different result." Cullen v. Pinholster, 563 U.S. 170,

189 (2011) (internal quotations and modifications omitted).

Deficiency of performance is established by demonstrating "that counsel

made errors so serious that counsel was not functioning as the 'counsel'

guaranteed ... by the Sixth Amendment." Id.

Prejudice is established by demonstrating that as a result of counsel's

errors, the petitioner was deprived of a fair proceeding.  Strickland, 466 U.S. at

687.  This requires the defendant to show that "but for trial counsel's error[,]

there is a reasonable probability that a more favorable outcome for the

defendant would have likely resulted.  Id. at 694.

> 3.     The Motion Is Not Procedurally Defaulted.

Claims not raised on direct review will be considered in a Section 2255 motion only if the petitioner can demonstrate "cause" and "prejudice."  See Massaro v. United States, 538 U.S. 500, 504 (2003); Bousley v. United States, 523 U.S. 614, 622 (1998).

Procedural default does not apply to ineffective assistance of counsel claims.  Massaro, 538 U.S. at 504-509.  Also, procedural default does not apply when the prosecutor is alleged to have suppressed favorable evidence. Strickler v. Greene, 527 U.S. 263, 283–84 (1999).

### C.     Request to Conduct Discovery On Sec. 2255 Motions.

Rule 6(a) of the Rules Governing Section 2255 Proceedings provides that a Sec. 2255 movant is entitled to undertake discovery when 'the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.'"

Rule 6(a) instructs that a district court may authorize a party to conduct discovery upon a showing of "good cause," and good cause exists "'where specific allegations before the court show reason to believe that the petitioner may, if facts are fully developed, be able to demonstrate that he is ... entitled to relief[.]'" Bracy v. Gramley, 520 U.S. 899, 908-09, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997)[emphasis added](quoting Harris v. Nelson, 394 U.S. 286, 300, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969)); Bedewi v. United States, 583 F. Supp. 2d 72, 79 (D.D.C. 2008).

### D.     The Government's Disclosure Obligation Under Brady in Cases Involving Voluminous Discovery.

The standard for producing discovery/<u>Brady</u> material in cases involving voluminous documents and other evidence is well established in this Circuit and District. "To the extent that the government knows of any [<u>Brady</u>] material in its production," the Court will "require [the government] to identify" it. <u>United States v. Saffarinia</u>, 424 F. Supp. 3d 46, 86 (D.D.C. 2020); cf. <u>United States v. Hsia</u>, 24 F. Supp. 2d 14, 29 (D.D.C. 1998) ("The government cannot meet its <u>Brady</u> obligations by providing [defendant] access to 600,000 documents and then claiming that she should have been able to find the exculpatory information in the haystack.").

The Court concluded in <u>Saffarinia</u> that "the government's <u>Brady</u> obligations require it to identify any known <u>Brady</u> material to the extent that the government knows of any such material in its production of approximately 3.5 million pages of documents." <u>Saffarinia</u>, 424 F. Supp. 3d at 86.

> "[T]he Government cannot hide <u>Brady</u> material as an exculpatory needle in a haystack of discovery materials." <u>United States v. Thomas</u>, 981 F. Supp. 2d 229, 239 (S.D.N.Y. 2013) (citing <u>Skilling</u>, 554 F.3d at 577); cf. <u>United States v. Bortnovsky</u>, 820 F.2d 572, 575 (2d Cir. 1987) ("The Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided ....").

<u>Id</u>. at 85.

The following passage by Judge Sullivan from Saffarinia is important in the context of Mr. Chansley's case and other January 6 prosecutions:

> The court in <u>Salyer</u> rejected the government's argument that it would have been a burden to identify <u>Brady</u>/<u>Giglio</u> information in the voluminous production. [2010 WL 3036444 (E.D.CA 2010)] at *3-*5. The court noted that "[d]uring the course of the years long investigation ..., the government personnel seemed to be able to segregate that evidence which would be useful in the prosecution in terms of guilt, but apparently made no efforts to segregate that evidence which runs counter to the charges." Id. at *4. The court explained that "[i]f the government professes [the] inability to identify the required information

after five years of pre-indictment investigation, its argument that the defense can 'easily' identify the materials buried within the mass of documents within months of post-indictment activity is meritless." Id. at *5. The court observed that "the Supreme Court has placed the initial Brady/Giglio duty on the government, and the [court] is not free to assign it to [the defendant]," id., and "the duty of the defendant to exercise diligence does not negate the duties of the prosecution in the first instance to affirmatively look for and disclose Brady/Giglio," id. at *5 n.6.

Saffarinia, 424 F.Supp. 3d at 88.  This passage likely caused the Government's

suggestion in a Status Memorandum, noted below, that defendants in January

6 cases should be assessed the burden of identifying favorable material among

the tens of thousands of hours of video evidence.  But Judge Sullivan

anticipated – and rejected -- such a claim:

> The government has an affirmative duty to disclose Brady material, it has presumably reviewed the discovery in this case, and "the prosecution knows, as any litigator would know, what evidence, on its face, significantly detracts from the factual elements which must be proven in a particular case." Salyer, 2010 WL 3036444, at *5.

Saffarinia, 424 F.Supp. 3d at 88.

Finally, this jurisdiction looks with disfavor on narrow readings of the

government's Brady obligations; it simply is insufficient for the government to

offer "niggling excuses" for its failure to provide potentially exculpatory evidence

to the defendant, and it does so at its peril.  See United States v. Paxson, 861

F.2d 730, 737 (D.C.Cir.1988); see also, United States v. Sheppard, No. CR 21-

203 (JDB), 2022 WL 17978837, 14 (D.D.C. Dec. 28, 2022) another January 6

case where Judge Bates favorably citing Saffarinia.  Judge Bates further

reiterated the view that "'courts in this jurisdiction look with disfavor on

narrow readings by prosecutors of the government's obligations under Brady,'"

quoting United States v. Edwards, 191 F. Supp. 2d 88, 90 (D.D.C. 2002).

### III.    Factual Basis To Conduct Discovery Prior to Final Briefing and A Hearing on the Merits.

#### A. Existence of CCTV Videos Revealed

On Monday, March 6, 2023, Fox News television host Tucker Carlson broadcast CCTV video from inside the Capitol that showed Defendant Jacob Chansley walking through various locations while in the company of or passing by numerous Officers of the United States Capitol Police without interference or incident. The video shows one Officer attempting to open a door with Defendant Chansley directly behind him, seemingly for the purpose of giving Defendant Chansley access to whatever room was behind that door. Another video showed an officer opening what appears to be a door to the Senate Chamber followed by Chansley walking through. https://youtu.be/Opy7MLGAPBk?t=169

On March 8, 2023, Mr. Chansley's prior attorney Albert Watkins, stated in a televised interview that he had never seen the videos played by Carlson on his television program, and they had not been in the discovery he received from the Government.  https://www.youtube.com/watch?v=WTdL5VtjbtY

#### B. Government Representations Regarding Status of Discovery and Disclosure of Material Pursuant to Brady.

As noted above, on March 27, 2023, the Government responded to a series of questions posed by the Mr. Chansley's current counsel regarding the representation made in the Nordean case filing as to the production of the CCTV video in discovery to Mr. Chansley's prior counsel.

The Government's response included specific representations regarding the CCTV videos shown on several news programs.  The pertinent passage of the correspondence is captured below:

Global disclosures (at this juncture) were made through Evidence.com as noted in the attached global discovery letters. The following cameras were uploaded to the defense instance of Evidence.com on the following dates:

| U.S. Capitol CCV Camera Depicted in Clip | Portion of Tucker Carlson Clip Aired March 6, 2023 | Approximate Time on January 6, 2021 | Date Uploaded to Defense Instance of Evidence.com | Global Discovery Volume |
|---|---|---|---|---|
| Camera 0102 | 2:48 minutes in the segment | 2:13 p.m. | October 22, 2021 | 05 |
| Camera 0204 | 3:28 minutes in the segment | 2:59 p.m. | October 22, 2021 | 05 |
| Camera 0205 | 4:01 minutes in the segment | 2:59 p.m. | October 22, 2021 | 05 |
| Camera 0303 | 3:35 minutes in the segment | 2:57 p.m. | October 22, 2021 | 05 |
|  | 5:21 minutes in the segment | 2:57 p.m. |  |  |
| Camera 0305 | 2:06 minutes in the segment | 2:49 p.m. | October 22, 2021 | 05 |
|  | 3:09 minutes in the segment | 2:51 p.m. |  |  |
|  | 4:12 minutes in the segment | 2:57 p.m. |  |  |
|  | 5:00 minutes in the segment | 2:57 p.m. |  |  |
| Camera 0310 | 4:31 minutes in the segment | 2:56 p.m | October 22, 2021 | 05 |
|  | 5:14 minutes in the segment | 2:56 p.m. |  |  |
| Camera 0461 | 3:48 minutes in the segment | 2:59 p.m. | February 21, 2023 | 25 |
| Camera 0962 | 3:40 minutes in the segment | 2:57 p.m. | October 22, 2021 | 05 |
|  | 5:25 minutes in the segment | 2:57 p.m. |  |  |

The Government claimed that all the videos broadcast on Fox news -- except one clip of 10 seconds in duration -- were produced via Evidence.com in "Global Discovery Volume 5" on October 21, 2021 -- 26 days before Mr. Chansley's sentencing hearing on November 17, 2021.[2]

That claim is irreconcilable with the <u>Nordean</u> case filing just weeks earlier in the case where the Government claimed Mr. Chansley had the videos as of September 24, 2021.  Both representations cannot be correct – and it is quite likely that both are false.

---

[2] Evidence.com is the online data base for video evidence accumulated by DOJ during the Capitol breach investigation.  It includes CCTV, body worn camera, and third-party video evidence seized with search warrants and/or obtained from sources such as YouTube and Facebook.

The reference to an "instance" is to one of two supposedly identical data bases that were created for storage and access to all the video evidence.  One "instance" was for the Government and one "instance" was for all defendants.  Discovery memoranda referenced herein described the process and timing of various forms of video evidence being transferred into the "government instance" and/or the "defense instance." Generally, video evidence was first transferred to the "government instance" and thereafter to the "defense instance."

Between May 20 and October 25, 2021, the Government filed one letter and four Status Memoranda in this case regarding the Government's ongoing efforts to comply with its obligations under Rule 16 and Brady.  Those Memoranda were filed in this case at ECF Nos. 38-1, 62, 75, 76, and 78.

The Memorandum filed as ECF No. 62 was dated July 12, 2021.  This was a 12 page Memorandum containing detailed information about the efforts being undertaken by the Government – seven months after Mr. Chansley's arrest and detention upon the Government's motion – to create a process for delivering discovery.  Regarding the production of video evidence, the Government stated:

### Systematic Reviews of Voluminous Materials

We are implementing and continuing to develop processes and procedures for ensuring that voluminous materials have been and will continue to be systematically reviewed for information that, *inter alia,* may be material to the defense, e.g.:

- o Comparing all known identifiers of any charged defendant against tips, Parler data, ad tech data, cell tower data, and geofence data; and

- o Searching all visual media (such as CCV, BWC, social media or device search results) – the collection of which grows on a regular basis – against known images of charged defendants.

Id., at 7.  If one thing was undeniably true about Mr. Chansley on January 6, 2021, it was that his Viking helmet with long horns made him easy to identify in the crowd of people who entered the Capitol, and track him as he moved.

The Memorandum filed on September 17, 2021 -- ECF No. 75 -- two weeks after Mr. Chansley entered his guilty plea, made the following

representation about the production of Brady material:

> rioters, or otherwise failed to do their jobs. Of course, there may be additional types of information a defendant may consider material or exculpatory, but since the government does not know the defense theory in any particular case, it is impossible to for the government to determine what other types of information a defendant may believe to be material.
>
> To the extent the type of information described above may exist, it may be interspersed among the voluminous sets of data referenced above. Given the volume of material, and because "[d]efendants are in a better position to determine what evidence they believe is exculpatory and will help in their defense,"[1] it is our intent to provide the defense with all data that may contain such information, but in a manner that will facilitate search, retrieval, sorting, and management of that information.

This is an express acknowledgement that the Government knew it was likely that Brady material was "interspersed" in the massive volume of accumulated evidence, including the video evidence, and that it could not disclose the favorable material in a manner that complied with its Brady obligations. The Government cited out-of-circuit authority in the footnote that is contrary to Saffarinia, suggesting that the obligation to uncover favorable material mixed among voluminous discovery should rest with the defense.

The Status Memorandum dated October 25, 2021 -- ECN No. 78 -- was represented to be an update as to discovery production as of October 21, 2021. That's the same the date cited in Government's March 27, 2023 to counsel regarding the timing of the production of the CCTV video evidence. In this Memorandum the Government made the following representation:

**Status of Production of Video Footage**

The following video footage has been shared to the defense instance of evidence.com

and is accessible to any Capitol Breach defense counsel who requests a license:

- 16,925 U.S. Capitol Police ("USCP") Closed Circuit Video ("CCV") files consisting of approximately 4,800 hours (over four terabytes) of footage from 515 cameras located inside the U.S. Capitol Visitor Center and on the Capitol grounds. To assist the defense in locating relevant USCP CCV, we have also produced (via USAfx) 15 camera maps of the interior of Capitol Visitor's Center and the interior of the Capitol.

Id. at p. 2.

The production as described was of 4800 hours of CCTV video "from 515

cameras located inside the U.S. Capitol Visitor Center and on the Capitol

grounds."

The Memorandum goes on to state:

**Future Productions**

Among the documents we expect future productions to include are:

- The remainder of USCP CCV (4,204 files), which is mainly comprised of footage that has been deemed Highly Sensitive, e.g., footage of the interior of the Capitol;[2]

Id. at p. 5.

As of October 21, 2021, this Status Memorandum filed with the Court

states that CCTV video from inside the Capitol had not yet been produced to

defendants.  It was still subject to "future productions" because it was deemed

"Highly Sensitive".

Mr. Chansley and his counsel **did not** have the CCTV video from

cameras inside the Capitol for use at before his change of plea or at sentencing.

But the Government did.

C. The Government Has Made Conflicting Statements Regarding
   Production of Brady Material Thereby Justifying Discovery.

In its filing in the <u>Nordean</u> case, the Government claimed that all the videos played on the Fox News broadcast had been produced to Defendants – including Mr. Chansley -- as of September 24, 2021.

In correspondence to the undersigned counsel, dated March 27, 2023, the Government claimed that all the videos broadcast by Fox News were produced in "Global Discovery Volume No. 5" on October 21, 2021, presumably to the defense instance of Evidence.com.

But in its Status Memorandum dated October 25, 2021, the Government stated that only CCTV video from the "U.S. Capitol Visitor Center" and the "Capitol grounds" had been produced in discovery as of that date – not the CCTV camera video from inside the Capitol that was to be the subject of future productions.

## IV.      BASIS FOR RELIEF UNDER SEC. 2255

A. <u>Suppression of Brady Material</u>.

As noted above, pursuant to <u>Saffarinia</u> the Government does not discharge its production obligation pursuant to <u>Brady</u> by the single act of producing in "Global Discovery" `thousands of hours of CCTV camera video that has "interspersed" therein material that is favorable to a defendant.[3]

The Government has represented to the Defendant that the video evidence broadcast on Fox News was produced no later than October 21, 2021 – and that claim appears to not be true.

---

[3] Even assuming the Government had produced 4,800 hours of CCTV video that included cameras inside the Capitol on October 21, 2021 – which it did not – there were only 27 days between the date of production and the sentencing hearing on November 17, 2021.  Between the two dates was a total of 648 hours, less than 15% of the time that would have been necessary to watch all the video evidence if the viewing was all day, every day, for those 27 days in between.

This Court and the Defendant are entitled to determine why the Government has made multiple contradictory representations on this crucial issue regarding the timing of the production of <u>Brady</u> material.   The Government had knowledge of the CCTV video evidence showing Mr. Chansley inside the Capitol – it used three segments from that video during sentencing.

The suppressed CCTV video favorable to Mr. Chansley would have supported a counter-argument to be made at sentencing that responded to the narrative stitched together by the Government.  The defense counterpoint would have been supported by video evidence contradicting the mischaracterizations by the Government regarding violent behavior and the failure of Mr. Chansley to follow police instructions while inside the Capitol and Senate Chamber.

Because this material was favorable to Mr. Chansley for purposes of sentencing, and it was suppressed by the Government, Mr. Chansley's due process rights were clearly violated by the failure to produce the CCTV camera video from inside the Capitol.

       B.   <u>Ineffective Assistance of Counsel</u>.

Attorney Albert Watkins recommended that Mr. Chansley accepted a plea agreement tended by the Government at a time when even the Government was telling the Court and all defense counsel that it had not yet produced evidence relevant to his case.  The plea offer by the Government required a stipulation by Mr. Chansley to an eight level enhancement under U.S.S.G. Sec. 2J1.2(b)(1)(B), which reads:

If the offense involved causing or threatening to cause physical
injury to a person, or property damage, in order to obstruct the
administration of justice, increase by 8 levels.

This +8 enhancement resulted in an "adjusted offense level" of 23.  The

plea offer required a stipulation that Mr. Chansley agree that the recommended

guideline range applicable to the offense of conviction was 41 to 51 months.

Without the +8 level enhancement, the adjusted offense level would have

15, and the recommended guideline range would have been 18 to 24 months –

less than half of what his counsel convinced him to accept.

On November 15, 2021, the Government filed a Notice Regarding Filing of

Sentencing Exhibits -- ECF Doc. No. 86.  In that Notice the Government

identified three CCTV videos from inside the Capitol that it had filed with the

court for purposes of the sentencing hearing set for November 17, 2021.

As of that date, prior counsel had not been provided any CCTV video

evidence from inside the Capitol.  The filing of a notice of intent to use CCTV

video should have caused Attorney Watkins to request that sentencing be

postponed in order to obtain from the government all video evidence of Mr.

Chansley from inside the Capitol.   Attorney Watkins knew that his client

claimed to have been escorted around the inside of the Capitol by USCP

Officers.  That claim is reflected in Mr. Chansley's second interview with the

FBI, captured in an FBI 302 dated January 9, 2021:

```
    Chansley stated that protestors had already passed the police and
entered the Senate Chamber before he arrived in that area. Chansley claimed
that police escorted him to the Senate Chamber and asked if he would assist
in getting the protestors to vacate the Chamber. Chansley claimed to use his
megaphone to request that protestors depart. Chansley did not recall the
name of the police officer who requested his assistance. While in the Senate
Chamber, Chansley took photos and said a Shaman prayer. Before departing the
Senate Chamber, Chansley left a note where the Vice President presides,
which stated "it's only a matter of time, justice is coming". When
questioned as to the meaning of that statement, Chansley went on a lengthy
diatribe describing current and past U.S. political leaders as infiltrators.
Chansley specifically named Vice President Mike Pence, former President
Barack Obama, former Senator Hillary Clinton and U.S. President-elect Joe
Biden as infiltrators involved in various types of wrongdoing.
Chansley claimed that the written statement was not meant to be a threat.
Chansley stated that D.C. Metropolitan Police eventually entered the Senate
Chamber and he and the other protestors departed the Capitol.
```

If Mr. Chansley's then counsel had not encouraged him to accept the Government's plea offer prior to receiving the CCTV camera video from inside the Capitol building, the videos would have been a basis to not agree to the +8 level enhancement.  They would have shown Mr. Chansley was telling the truth about how he came to be inside the Senate Chamber, that he committed no acts of violence, that he expressed no hostility or intention to do violence to any property or individuals.

Attorney Watkins was ineffective by not obtaining the CCTV camera video after he was aware such video was available based on the fact that the Government gave notice of its intent to use CCTV camera video at sentencing. By not securing the video and determining whether it supported Mr. Chansley's description of events, Attorney Watkins allowed the Government to take liberties in describing Mr. Chansley's conduct while inside the Capitol, without fear of the unproduced videos contradicting the Government's claims.

The following is one example of the Government making use of its unilateral access to CCTV video to favor its narrative of Mr. Chansley at sentencing – unrebutted since Mr. Chansley the CCTV videos now at issue:

> The government cannot overstate the seriousness of the defendant's conduct as a one of

17

> the most prominent figures of the historic riot on the Capitol on January 6, 2021. Armed with a six-foot long spear, the defendant brazenly marched past dozens of law enforcement officers, with rioters throwing debris of all kind at those who opposed them, past broken windows and through doors ringing with alarm bells. The defendant was among the first 30 rioters to penetrate the U.S. Capitol building. The defendant then stalked the hallowed halls of the building, riling up other members of the mob with his screaming obscenities about our nation's lawmakers, and flouting the "opportunity" to rid our government of those he has long considered to be traitors. All of this

Attorney Watkins was also ineffective by recommending that Mr. Chansely enter into an agreement to plead guilty to the most serious offense charged, stipulating to sentencing enhancements, and waiving his appeal rights – all while discovery/Brady material related to the charges and enhancements had not yet been produced by the Government.

But for Attorney Watkins' ineffective assistance, Mr. Chansley would not have entered into a guilty plea with the stipulations and waivers demanded in the Government's offer.  An effective and competent practitioner would have advised Mr. Chansley that he could plead guilty to all the charges in the

Indictment without any plea agreement, and preserved his rights to argue against the sentencing enhancements and to later appeal on appropriate legal issues.

### V.    Matters Requiring Further Discovery.

These circumstances give rise to the following issues, among others, which can only be addressed if Mr. Chansley is given the opportunity to conduct discovery into why <u>Brady</u> material as to him was suppressed by the Government:

1. Why did the Government give inconsistent explanations three weeks apart (March 6 and March 27, 2023) as to when the CCTV videos played on Fox News had been produced to Mr. Chansley – and why were both explanations incorrect?

2. Did the Government's production in "Global Discovery" of CCTV video favorable to Mr. Chansely satisfy the standard in this Circuit and District regarding the Government's burden to not suppress favorable evidence.

3. Why did the Government falsely state in its March 27, 2023, correspondence that the CCTV video from inside the Capitol was produced via the defense instance of Evidence.com on October 21, 2021, when the Discovery Memorandum filed with this Court on October 25, 2021, stated that only Capitol grounds and Visitor's Center CCTV video were produced on that date?

4. What decision-making process led the Government to use CCTV camera video from inside the Capitol during Mr. Chansley's sentencing hearing, and did the individual prosecutors on Mr. Chansley's case know interior CCTV camera video had not yet been produced to Mr. Chansely?

5. Were the individual prosecutors on Mr. Chansley's case, or any Department of Justice officials supervising this case, aware that some CCTV camera video from inside the Capitol was consistent with Mr. Chansley's statements to the FBI about his actions inside the Capitol prior to his sentencing?

6. Were there discussions/deliberations within the Department of Justice with respect to offering Mr. Chansley a plea agreement and

going forward with his sentencing when favorable material in the possession of the Government had not yet been disclosed pursuant to Rule 16 or the Government's obligations under <u>Brady</u>.

CONCLUSION

Based on the foregoing, Defendant Jacob Chansley moves this Court to vacate, correct, or set aside his conviction and sentence, and to grant him the right to conduct discovery with regard to the facts and matters set for herein.


Dated: April 27, 2023                    Respectfully submitted,

                                         <u>/s/ William L. Shipley</u>
                                         William L. Shipley, Jr., Esq.
                                         PO Box 745
                                         Kailua, Hawaii 96734
                                         Tel: (808) 228-1341
                                         Email: 808Shipleylaw@gmail.com

                                         Attorney for Defendant