**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 21-cr-0003 (RCL)** |
| | ) | |
| **JACOB CHANSLEY** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

**DEFENDANT JACOB CHANSLEY'S REPLY TO GOVERNMENT'S**
**OPPOSITION TO GOVERNMENT'S PETITION TO SET ASIDE CONVICTION**
**AND SENTENCE PURSUANT TO 28 U.S.C. SECTION 2255**

William L. Shipley, Jr., Esq.
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

*Attorney for Defendant*

Comes Now Defendant Jacob Chansley, by and through his counsel of record, William L. Shipley, and respectfully submits his Reply to the Government's Opposition to his Motion pursuant to 28 U.S.C Sec. 2255.

A. The Defendant Did Not Waive the Claims Raised by This Motion Under The Terms of His Plea Agreement.

As noted by the Government in its Opposition, the Defendant's Plea Agreement included a standard waiver of his right to appeal, as well as a limited waiver of his right bring this motion pursuant to Sec. 2255.  The limited waiver reads as follows:

**E.    Collateral Attack**

Your client also waives any right to challenge the conviction entered or sentence imposed under this Agreement or otherwise attempt to modify or change the sentence or the manner in which it is determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 or Federal Rule of Civil Procedure 60(b), except to the extent such a motion is based on newly discovered evidence or on a claim that your client received ineffective assistance of counsel.  Your client reserves the right to file a motion brought under 18 U.S.C. § 3582(c)(2), but agrees to waive the right to appeal the denial of such a motion.

Mr. Chansley has raised a claim based on "ineffective assistance of counsel" which was unquestionably reserved under the terms of the waiver.

In addition, the claimed <u>Brady</u> violation is raised on the basis of "newly discovered <u>evidence</u>" – i.e., the videos that were not produced by the Government consistent with its obligations as interpreted in this District. While it may be true that the videos do not reflect newly discovered "facts" given that Mr. Chansley had personal knowledge of his own movements and interactions with law enforcement inside the Capitol on January 6, neither Mr. Chansely nor his attorney were aware of the "evidence" in the form of the videos that only recently came to light.  As such, the claimed <u>Brady</u> violation

raised by this motion falls outside the limited waiver set forth in his plea

agreement.

      B. The Government's Opposition Tacitly Confirms It Violated Mr.
          Chansley's Rights Under <u>Brady</u> for Production of Information
          <u>Favorable To Him Regarding Sentencing</u>.

      What is both noteworthy and remarkable about the Government's

Opposition to Mr. Chansley motion is that over the course of 32 pages, the

Government not one time addressed whether its production of the <u>Brady</u>

material it was aware of in the CCTV video violated the standard for production

established in this District in <u>United States v. Saffarinia</u>, 424 F. Supp. 3d 46,

86 (D.D.C. 2020); relying upon an earlier decision in <u>United States v. Hsia</u>, 24

F. Supp. 2d 14, 29 (D.D.C. 1998), and recently confirmed as still valid in the

context of January 6 prosecutions in <u>United States v. Sheppard</u>, No. CR 21-203

(JDB), 2022 WL 17978837, 14 (D.D.C. Dec. 28, 2022).

      If the Government's production of CCTV video from inside the Capitol

building did not meet the requisite standard, then it violated its <u>Brady</u>

obligations in this case.  The mere fact that the videos were made available, in

some manner, prior to the November 17, 2021, sentencing hearing is not – by

itself – sufficient to establish compliance by the Government with its <u>Brady</u>

obligation.  "[T]he Government cannot hide <u>Brady</u> material as an exculpatory

needle in a haystack of discovery materials." <u>Saffarinia</u> at 85.

      While claiming the videos played on the Tucker Carlson program were

produced in discovery prior to the Mr. Chansley's sentencing , the Government

does not – because it cannot – deny that the videos were only produced as part

of a "global" dump of a huge volume of video evidence into a massive database that all defense counsel were only beginning to learn to access.

Rather, the Government repeats a specious argument it advanced in its September 17, 2021, Discovery Status Memorandum, ECF No. 75.  In that filing the Government made a tacit admission that it knew there would be Brady material in the massive volume of video evidenced it would be producing in discovery.  To avoid the obligation to highlight and identify any such favorable material as part of the disclosure process, the Government opined that it would be a better practice for that effort to be undertaken by the defendants and their counsel since the Government would not be aware of defense theories or strategies in any particular case.

Defense counsel in Capitol Breach cases have made requests including any and all information that captures an individual defendant's conduct or statements; shows people "peacefully walking around the Capitol"; or suggests that a member (or members) of law enforcement allowed people to enter or remain in the Capitol or on restricted grounds, acted friendly or sympathetic to the rioters, or otherwise failed to do their jobs.  Of course, there may be additional types of information a defendant may consider material or exculpatory, but since the government does not know the defense theory in any particular case, it is impossible to for the government to determine what other types of information a defendant may believe to be material.

In the following paragraph the Government's text included a footnote which is referenced in the Government's Opposition to this motion.

> To the extent the type of information described above may exist, it may be interspersed among the voluminous sets of data referenced above.  Given the volume of material, and because "[d]efendants are in a better position to determine what evidence they believe is exculpatory and will help in their defense,"[1] it is our intent to provide the defense with all data that may contain such information, but in a manner that will facilitate search, retrieval, sorting, and management of that information.

In the footnote the Government cited two out-of-circuit decisions at the district court level as support for its effort to relieve itself of its Brady obligation, United States v. Meek, No. 19-cr-00378-JMS-MJD, 2021 WL 1049773 *5 (S.D. Ind. 2021), and United States v. Ohle, No. S3 08 CR 1109 (JSR), 2011 WL 651849 *4 (S.D.N.Y. 2011).

In Meeks the Government had produced and electronic database with millions of pages of records that was "user friendly", searchable, and with indexes.  In fact, the defense had access and the same search capability as was available to the Government so in Meeks it was just as likely that the defense would discovery exculpatory evidence in the discovery as it was that the Government would do so.  But in addition, the Court made note of the nature of the defendants themselves and the legal representation they retained:

> In this case, both Defendants are sophisticated and formerly high-level executives of a publicly traded  company.  Each Defendant is represented by experienced and talented counsel from notable law firms across the country. Both Defendants have vigorously litigated this case, with each filing several motions and lengthy briefs on various issues.... While the Court is by no means criticizing Defendants for doing so— indeed,  criminal  defendants  are encouraged to zealously defend

themselves within the bounds of the Constitution—Defendants cannot pursue such an aggressive defense strategy and simultaneously claim that they have very limited resources.

United States v. Meeks, 2021 WL 1049773, p. 5.

Similarly in United States v. Ohle, the factual circumstances there were radically different from the circumstances involving Mr. Chansely and his counsel. Much like Meeks, the Government and the defense in Ohle were in a position of being equally likely to uncover exculpatory evidence in the massive database of documents created by the Government.

[T]he Government, to facilitate review of the documents, provided defense counsel with an electronically searchable Concordance database. Both the Government and defense counsel had equal access to this database. Thus, the defendants were just as likely to uncover the purportedly exculpatory evidence as was the Government.

United States v. Ohle, 2011 WL 651849, p. 3.

Here, the circumstances were not even in the same universe as was before the courts in Meeks and Ohle. At the same time the Government claims it was making effective production of Brady material to Mr. Chansely and his attorney, the Evidence.com database was just coming online – and no one knew precisely how to use it or how effective it would be in providing defendants access to video evidence.

Attached hereto as Exhibit "A" is a Memorandum regarding the production of video evidence in discovery, sent to all defense counsel by Federal Defender A.J. Kramer on **October 15, 2021**. Below are still images of various passages from that Memorandum:

After months of weekly meetings with the Department of Justice, we are ready to assist with access to Evidence.com. Evidence.com hosts the body-worn camera video and closed-circuit TV footage from the Capitol.

We are also working on a getting defense counsel access to a defense Relativity database. Relativity is an online document review database which will host the hundreds of thousands of pages of documents. That database is still in progress, but once we have further information, we will let you know.

To allow defense teams access to the Evidence.com database, the government purchased licenses of Axon for defense counsel to use. Based on the information available, they

1

purchased sufficient licenses to provide one license per defense counsel (taking into consideration that some defense counsel represent more than one client).

The NLST will be distributing licenses to access Evidence.com. To be eligible, you need to be counsel of record as there are limited licenses. Sammy Lopez and Kelly Scribner are the NLST Evidence.com administrators and point people for defense counsel for Evidence.com. You can obtain a license by filling out the attached form and sending it to sammy_lopez@fd.org. After confirmation that you are the attorney of record, Mr. Lopez will provide you a license and reference materials on how to use the service. Once you have received the license, you may

Unlike a document review database, there are limited search capabilities with Evidence.com. You may find yourself viewing many hours of video to determine what is pertinent to your client. The government has also provided Excel spreadsheets with basic information regarding the files. Though it is not a comprehensive index, it may assist your review process.

It should be kept in mind that this is as of October 15, 2021 – only one month prior to Mr. Chansley's sentencing.

Accompanying the Memorandum was a document titled "Evidence.com

Quick Start Guide."  Below are still images from various parts of that Guide:

You can use Evidence.com to search for and view videos. You may not access videos designated as SENSITIVE or HIGHLY SENSITIVE until a protective order has been entered in the relevant case. Consistent with the standard protective order entered in most Capitol Breach cases, you must obtain a fully executed copy of Attachment A to the protective order before providing your client access to SENSITIVE or HIGHLY SENSITIVE videos, and you must file a copy with the Court within one week of execution. Further, unless you have express written agreement of the United States, prior authorization from the Court, or an exception identified in the protective order is applicable, **client access to videos is restricted as follows:**

- Your client may not view, download, record, reproduce, or disclose videos designated, categorized, or tagged as HIGHLY SENSITIVE unsupervised by defense counsel or an attorney, investigator, paralegal, or support staff person employed by defense counsel.
- Your client may not record, reproduce, or disclose designated, categorized, or tagged as SENSITIVE.

**How Do I Register My Evidence.com Account?**

Once you have completed the "Axon License Request Form" and been authorized to receive a license, you will receive an email titled "You have been invited to join Federal Public Defender on Evidence.com." Click on the first link to register and activate your account or copy and paste the second link into your internet browser and use the

invite code. **Important Note:** The invitation link is only active for 7 days. If it expires before you register, you will need to request another invitation link.

## How Do I Access the Videos on Evidence.com?

After logging in, you will be taken to the dashboard. From the dashboard, click on the EVIDENCE tab in the top left.



You will be taken to the list of all videos you have access to.



You can also access videos from the CASES tab. The Government is sharing videos with the Defense version of Evidence.com in batches. Each batch is a separate "case." The cases do not refer to any individual defendant's case. They are grouped by BWC or CCTV video. To see each case, go to the CASES tab at the top.

## A Word of Caution

Your client will need to create an account at My.Evidence.com to view shared videos. When you share videos through your own Evidence.com account, clients are granted permission to view by default and **should not be granted permission to download HIGHLY SENSITIVE video or reshare SENSITIVE or HIGHLY SENSITIVE video**. The sections below cover where you access the share options, the settings that should and should not be selected when sharing individual videos or multiple selected videos, and how to revise the permissions if you accidentally share something you should not have.

**Share Options for Single Video You Are Viewing:**

When you have a video open, there will be a "Manage Shares Outside My Agency" option in the top right.

The entire Quick Start Guide is eight pages long and was first distributed to defense counsel by the Federal Defender's Office on October 15, 2021.  It is attached hereto as Exhibit "B".

So, to the extent the Government's Opposition is premised on the non-contextualized claim that all CCTV videos were "produced" to Mr. Chansley's counsel no later than October 22, 2021, the reality of that time was that making the videos available to counsel through the online database Evidence.com, and counsel having meaningful access and an ability to share them with clients such as Mr. Chansley, were not even remotely the same thing.

It's worth keeping in mind this was more than nine months AFTER the events at the Capitol and Mr. Chansley arrest and detention pending trial. For nine months Mr. Chansley was held while his counsel was denied favorable material that the Government knew it possessed.  It is far easier to coerce a guilty plea out of a defendant when his counsel is only supplied with a steady stream of inculpatory material in discovery, while exculpatory material seems to not exist.

Somehow the Government finds a sense of virtue in the fact that on May 25, 2021, it produced five interior CCTV videos as part of its initial production of case-specific discovery to Mr. Chansley's counsel.  Apparently the Government believes that the mere fact of this production was some form of "notice" to Mr. Chansleys' counsel that there might be additional CCTV camera video that he should pursue.

The fact that the Government produced other evidence in the form of videos – BWC and third-party shot video such as that posted online by the New Yorker magazine – does not excuse the Government from its failure to produce

other video that it possessed and had knowledge was favorable to Mr.
Chansley.

   While it is true that many of these other videos showed the events inside
the Senate Chamber from the perspective of the floor of the Senate, none of the
videos showed the hallway scene outside the Senate Chamber when Officer
Robishaw literally reached for the handle of a closed door to the Senate
Chamber, opened that door, and stood by while Mr. Chansley walked past him
to enter.  Officer Robishaw's rationalization of his actions as reflected in his
grand jury testimony is contravened by the video evidence.  Officer Robishaw
was not by himself – another Capitol police officer was with him.  That officer
was positioned behind Mr. Chansley when Officer Robishaw went ahead of Mr.
Chansley to open the door and allow him to enter the Chamber.  The fact that
other video cameras inside the Chamber captured Mr. Chansley entering,
followed by Officer Robishaw, does not detract from the powerful image of Mr.
Chansley literally being escorted into the Chamber by members of the US
Capitol Police.

   Yet use of this image was denied to Mr. Chansely and his counsel at
sentencing – and Mr. Chansley suffered prejudice as a result notwithstanding
the celebration by the Government of the strategic choices made by Mr.
Chansley's counsel at sentencing.  But, then again, without the favorable
evidence denied to him what options did he have?

   The evidence of prejudice to Mr. Chansley at sentencing is reflected in
the very words used by the Government in its Opposition – which when left

unrebutted by contrary evidence allowed the Government to paint a very ugly portrait of Mr. Chansley's actions on January 6.

But also an incomplete and one-sided portrayal that could have been rebutted by the video evidence not produced in a way that complied with the Government's Brady obligations.

Over the course of just a few pages of the Opposition the Government describes Mr. Chansley in the following ways – an endeavor strikingly similar to the ways it characterized him at sentencing:

- He entered the building as part of a violent crowd.

- Chansley witnessed first-hand the destruction of window and door?

- His actions during the violent breach provide more than enough evidence of corrupt intent.

- But he had breached the police line at 2:09, and went inside less than one minute after Dominic Pezzola broke the window at 2:13.

- Chansley "faced off" and "confronted" USCP for more than 30 minutes in front of the Senate Chamber.

The undisputed facts are that Mr. Chansley entered the Capitol through the open Senate Wing door, as the 35th person through the doorway more than a minute after Proud Boy Dominic Pezzola broke an adjacent window, thereby allowing individuals at the veryfront to enter.

There was no evidence that Mr. Chansley saw what Mr. Pezzola had done from whatever vantage point he had nearly forty people deep in the crowd outside before the window was broken.  The government acknowledges that Mr. Chansley was still near the police line only 4 minutes early at the lower west terrace level just before Proud Boy Daniel "Milkshake" Scott charged into

Capitol Police Officers and allowed the crowd at that location to advance up the stairs to the Upper West Terrace.  How much Mr. Chansley might have seen of the violence engaged in by Mr. Pezzola – or Mr. Scott -- was a matter of speculation.

While others in the crowd may have engaged in "violence" to gain entry, Mr. Chansely did not.  This raises the question as to what were Mr. Chansley's "actions" during Mr. Pezzola's violent conduct that were evidence of Mr. Chansley's "corrupt intent?"

Finally, the Government claims Mr. Chansley "faced off" and "confronted" Capitol Police Officers inside the Capitol for more than 30 minutes. But this is exactly the type of fact-free mischaracterization used at sentencing by the Government that would have been rebutted with the unproduced video evidence showing Mr. Chansley repeatedly in close physical proximity to Capitol Police Officers and not expressing any hostility or aggressive behavior towards them.

The prejudice to Mr. Chansley was the result of the video evidence this Court was not given the opportunity to see because the Government didn't provide it to the Court, and it didn't produce the video evidence to Mr. Chansley's counsel in a manner and at time when he could have provided it to the Court on Mr. Chansley's behalf and for his benefit.

Dated: June 15, 2023                              Respectfully submitted,

                                                  /s/ William L. Shipley
                                                  William L. Shipley, Jr., Esq.

PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

Attorney for Defendant